JAMES M. KINTER v. WILLIAM PICKARD.

67    125
d124    149

*Equity—Money decree—Assignment for benefit of creditors—Execution—Fraudulent disposition of assets—Trust.*

1. Equity has no general jurisdiction to grant money decrees.
2. Under our statutes, the whole of a debtor's estate vests in his assignee under an assignment for the benefit of the debtor's creditors, and is not subject to seizure by any particular creditor.
3. The fact that one man furnishes another with means to start in business, whether for honest or dishonest purposes, does not give the former any legal title in the goods. If funds are so invested, they may create a trust in favor of creditors to that extent, but the goods do not belong to the debtor.
4. In this case, on a review of the testimony, the Court held that the jury should not have been charged that there was any case against the defendant to be passed upon by them.

Error to Isabella. (Hart, J.) Argued July 6, 1887. Decided October 6, 1887.

Replevin. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*H. H. Graves* (*C. J. Willett,* of counsel), for appellant.

*Fancher & Dodds,* for defendant.

CAMPBELL, C. J. Plaintiff sued in replevin for goods and chattels taken from his store by defendant under an execution upon a decree against Aaron Wessels. The decree is averred to have been made in a suit by one Miller against Aaron Wessels, jointly with the administrator of Samuel B. Wessels, deceased, and was rendered July 19, 1884. The execution was issued and levied in August, 1885, and was for $2,300. It does not appear from the record for what purpose, or under what claim, the bill was filed. It appears by

an amendment to the bill of exceptions that the cause was at issue in 1876. The bill of exceptions contains all the testimony. Several exceptions were taken on the trial, but the assignments of error do not include most of them, and are aimed chiefly at the charge, and at the admission of certain testimony.

The principal objection to the charge is that it should not have submitted to the jury the questions on which recovery was allowed in defendant's favor. The only ground on which defendant could lawfully recover was that the goods levied on belonged to Aaron Wessels; and it is claimed that no testimony legally establishing that fact appears in the case.

The property levied on included a stock of goods and four cattle. We do not discover in the testimony anything whatever identifying these cattle with Aaron Wessels. The whole testimony seems to have been aimed at the store business, so far as showing any fraud is concerned, and, although there is some testimony about cattle, there is none relating to these cattle, that we have found. The court makes no allusion in his charge to any subject of inquiry except the stock of goods seized.

The great body of the testimony, which is greatly wanting in definiteness, and is claimed to show fraud, relates to fraudulent dealings set up concerning other property of Aaron Wessels not in controversy here. None of the goods levied on were ever shown or claimed to have been transferred by Aaron Wessels for any unlawful purpose, and the levy cannot be maintained on any such ground. This makes the case differ materially from ordinary attempts to set aside transactions as fraudulent against creditors, and raises some difficulties accordingly. To understand the bearing of the questions presented, it is necessary to attend to the way in which they are brought in.

Aaron Wessels appears to have made an assignment about

the first of January, 1884. Previous to this time plaintiff had, as he testifies, purchased several hundred dollars' worth of goods from him in part payment of a debt. It appears that plaintiff had a claim under the assignment for a balance which does not appear to have been contested. In March, 1884, at a public sale by a sheriff, the validity of which is not disputed, plaintiff bid off goods at about $1,000, and paid for them. These goods, with what he already owned, he used as a stock to open a store with at Salt River, at that time, and he put Aaron Wessels in charge as salesman, and, as he claims, on wages of about $500 a year. These goods were sold out in the usual way; the stock being replenished by new purchases from time to time, all of which are shown to have been made by plaintiff in his own name, and on his own credit. The testimony shows him to be of good repute and good financial standing. At the time of the levy, which was not made until August, 1885, rather more than a year from the date of the decree, and about a year and five months after the store was opened, the goods seized were mostly from the purchases made of new goods. There is no testimony tending to show any knowledge by plaintiff of this decree, or of the suit in which it was rendered, and there is nothing showing upon what ground or claim it was rendered. There were two defendants in the original bill, and the defendant's plea avers that each of these defendants filed a separate cross-bill against George W. Miller, the complainant, and Mary Miller, who was not a party to the original bill. As equity has no general jurisdiction to grant money decrees, we have no means of knowing out of what this decree arose.

In order to make out a case, defendant introduced testimony, the ostensible purpose of which was to show that Wessels had made way with a considerable amount of property, and to show a lack of money in plaintiff. So far as Wessels is concerned, there is testimony having a legal tendency to show a removal of some of his property, while he

was in business, of such a character as to be suspicious. More or less of this was not admissible, as involving little or no personal knowledge. There were some facts that, as to Wessels, would have an adverse meaning. But, except as to one or two items, the value of which is not shown, none of this is traced to plaintiff, or to his knowledge, and there is no testimony contradicting his version of how he purchased those goods. There is no claim that these were the goods replevied, or that they were sold so that the proceeds went to the purchase at the sheriff's sale. And there is no testimony contravening plaintiff's purchase of Wessels. The court, in his charge, paid no attention to any of these previous transactions, as having any necessary connection with the real controversy, beyond throwing light on the relations of the parties, and a special exception was taken to this suggestion; but, as error was not assigned on this exception, it need not be considered beyond its effect on the general charge.

The most important question, perhaps, is whether, if the testimony tended to show that the money to purchase the stock came from Wessels, the stock, as it stood when the levy was made, was subject to that levy.

Assuming, which is not very clear, that there was testimony from which it could be inferred that Wessel's means furnished the price, all of that testimony referred to property owned before Wessels made his assignment, and subject to the assignment. By our statutes then in force, the whole estate vested in the assignee, and was not subject to the seizure of any particular creditor, and was not subject, therefore, either to levy or to any other legal appropriation. The assignee, and not Wessels, owned it, and had a right to follow it.

But, if this were not so, the case stands no better. The fact that one man furnishes another with means to start in business, whether for honest or for dishonest purposes, does not give the former any legal title in the goods. If funds

are so invested, they may create a trust in favor of creditors
to that extent, but the goods do not belong to the debtor·
In the present case, the business has been carried on as plaint-
iff's busin. ss, and the goods bought on his credit would be
subject to his creditors, whatever equities may exist as to
others.   Goods that Wessels never owned cannot in law be
treated as his.   Any trust resulting in favor of his creditors
must be worked out in equity, if the debt cannot be satis-
fied at law.

We think the objection is well taken that the court should
not have charged that there was any case against defendant
to be passed on by the jury.

It is not necessary to consider the errors assigned on testi-
mony.   The testimony, whether on knowle lge or otherwise,
was to a considerable extent let in, apparently, on the theory
that this property had been disposed of by Wessels in fraud
of his creditors, and was therefore subject to levy ; when in
fact, as the court charged, the sale was valid, and the pro-
ceeds went to pay creditors.   The testimony especially com-
plained of was open to some other criticism.   As we did not
have the benefit of oral argument by plaintiff's counsel, and
their brief is rather general, we do not think it needful to go
further.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.