450

ASA HOAG AND WILLIAM MANSFIELD V. WILLIAM D.
PLACE ET AL.

*Waters and water-courses—Riparian ownership—Right to ice—
Deed—Practical construction—Easement—Prescriptive right.*

1. The owner of the soil under the water is ordinarily the exclu-
sive owner of the ice forming upon such water, and the ripa-
rian ownership of the bed of a stream carries with it the right
to the ice forming upon the surface of such stream as far as
such riparian right extends; citing *Lorman v. Benson*, 8 Mich.
18; *Ice Co. v. Excelsior*, 44 Id. 229; *Clute v. Fisher*, 65 Id. 48;
*Bigelow v. Shaw*, Id. 341.

2. In the absence of mistake or fraud or concealment of important
facts, courts should not give a construction to a deed in direct
conflict with that which the parties have themselves put upon
it, especially after such construction has been in force and
assented to by all of the parties for a period of time long enough
to create prescriptive rights and equities under the statutory limi-
tations of the State; and this rule applies even when the terms
employed in the deed are doubtful.

3. When a water easement is granted in general or indefinite
terms, rendering the construction doubtful, contemporaneous
acts of the parties, giving a practical construction to the grant,
will be deemed to express their intention; citing Gould, Wat.
§ 318a, and cases cited; *Mudge v. Salisbury*, 110 N. Y. 413, 417.

4. Where the uniform and continued acts of the parties for many
years have placed a construction upon a contract or deed of
conveyance, the court will give effect to the instrument as the
parties themselves have construed it; citing *Johnson v. Gibson*,
78 Ind. 282; *Reissner v. Oxley*, 80 Id. 580; *Lyles v. Lescher*,
108 Id. 382; *Kingsland v. Mayor*, 45 Hun, 198; *Fitzsimons v.
Foley*, 80 Mich. 518.

5. In order to establish a right or easement in the lands or waters
of another, it is only necessary that the enjoyment be adverse
and under a claim of right, and with the knowledge and con-
trary to the interests of the owner; that it be of such a nature
that it is difficult to account for it except on the presumption of
a grant from such owner; and that it has continued in that
manner for the period of limitation fixed by the statute; and
the knowledge of the exercise of this right in the manner

stated is binding, not only on the owner, but upon his grantee as well.

6. Applying the principles stated to the facts in this case, the right of the complainants to harvest the ice forming from year to year upon a mill pond on defendants' land, created by the exercise of a right of flowage granted by the former owners of the land, is sustained.

Appeal from Ionia. (Smith, J.) Argued October 7, 1892. Decided November 18, 1892.

Bill to settle the ownership of ice, and to restrain defendants from claiming title thereto, and from cutting or removing the same. Both parties appeal. Decree reversed, and one entered in this Court for complainants. The facts are stated in the opinion.

*Mitchel & Hawley* and *John C. Blanchard,* for complainants.

*A. F. Bell* and *F. D. M. Davis* (*McGarry & McKnight,* of counsel), for defendants.

DURAND, J. The bill in this case is filed for the purpose of settling the ownership of the ice forming from time to time on a body of water known as the "Prairie Creek Pond."

On April 25, 1855, John P. Place and Laura Place, his wife, executed and delivered to John C. Dexter a warranty deed in the usual form, conveying to him certain property mentioned in the deed, and described as:

" The following described parcels of land in Ionia county, Michigan, on section 21, in township 7 north, of range 6 west, described as follows, to wit: Being all the land lying south of the center of the highway leading through said section 21 from Ionia county-seat to Lyons, and north of the north line of Detroit & Milwaukee Railroad, which belongs to the said parties of the first part, west of a point on said center of said highway 35 rods east of the center of Prairie creek, where the said highway crosses the same,

embracing in the above the mill yard and location of the
saw-mill lately burned; also the right of building and
maintaining a dam across Prairie creek on the said highway,
or at any point or place north of same, sufficiently high
to flow the lands of the said parties of the first part on
said section 21, and on the south half of the south-west
quarter, and the west half of the south-west quarter of the
south-east quarter, of section 16, in said town, back to the
north line of the last-described pieces, together with the
right to flow said lands north of and on said highway; also
embracing in the above rights all of the present mill race,
together with the east bank of said race; also the right of
making and maintaining a mill race on the east side of
the said creek, and north of the center of the highway, at
any suitable point, together with the right of taking earth
from the hill on the east side of the creek, and north of
the center of the highway, so much of and as often as the
same may be necessary to make, maintain, and repair said
dam or mill race; also the right of entering upon the lands
adjoining said dam and race whenever it may be necessary
to repair the same; also the right of keeping and floating
logs in said pond or race; also the right of cutting the
timber in and clearing out the timber and logs in the
pond; also the right of making and maintaining a race
across the south half of the south-west quarter of section
16, in said town, along the high bank or hills on the west
side of said creek, at any height, and thence in a straight
line to the highway, near where the said highway crosses
the west line of said section 21, together with the right of
entering upon lands adjoining said race only so much and
so often as may be necessary to repair said race. The said
party of the second part, and his heirs and assigns, is to
make and maintain suitable bridges across the said race
where necessary for crossing. Together with all and singu-
lar the hereditaments and appurtenances thereunto belong-
ing, or in any wise appertaining, and the reversion and
reversions, remainder and remainders, rents, issues, and
profits, thereof; and all the estate, right, title, interest,
claim, or demand whatsoever of the said parties of the first
part, either in law or equity, of, in, and to the above-
bargained premises."

Afterwards, through various conveyances to and from
different persons, the title finally passed into the complain-
ants, the same as that conveyed by the Dexter deed, and

they have succeeded to all the rights granted to him under such deed. The defendants are heirs of John P. and Laura Place, and they have succeeded to all the rights formerly held by them, and which they had not disposed of or lost through their acts or omission to act in reference to the subject now in controversy.

In 1863 the owners of the Dexter title built a flouring-mill and erected a dam, which set back the water of Prairie creek, and overflowed the land mentioned in the deed, and thereby created the pond of water known as the "Prairie Creek Pond," and which is situated near the city of Ionia. At the time of the giving of the Dexter deed, Ionia was a small place, but in 1869 it had grown into a town of considerable size and importance; and during the winter of 1869 and 1870 one Norman S. Goodrich, under a lease from the then owners of the Dexter title, proceeded to put the pond in condition for the ice business, and begun to cut and harvest ice for sale to his customers in Ionia. This he continued to do during those years, and also during the winter of 1871. On January 30, 1872, in consideration of the sum of $480 by him paid, he obtained from the owners of the Dexter title a lease for the period of 10 years of all—

"The territory known as the 'Prairie Creek Mill Pond' * * * for the express purpose and benefits of the ice which shall or may accumulate thereon during the term of this lease, together with all and singular the benefits, liberties, and privileges to the said premises for such purposes belonging."

This lease was duly witnessed and acknowledged, and recorded in the office of the register of deeds for Ionia county. Under this lease, Goodrich proceeded to build ice-houses adjoining the pond upon land which he leased of Mrs. Laura Place for that purpose. He improved the pond by taking out stumps and trees, and cutting down the brush, so as to make a clear field for the ice to form upon, and

constructed a road to enable him to draw the ice, when cut, from the pond to the city.    During all this time Mrs. Place occupied the farm and lived in sight of the pond, knew all that was being done, and her sons and hired man were employed by Goodrich at different times to assist him in conducting his ice business.    Goodrich continued to operate the ice business under this lease for about eight years, when, finding he could not get an extension of it when it should expire, he sold out the business, including the balance of the term of the lease, to Isaac P. and Anson Hoag, for $1,450.    Before buying out Goodrich, they obtained a promise from W. D. Place, one of the defendants, who it appears was at that time managing the business for his mother, that if they bought out Goodrich they could obtain the title of the land upon which the ice-houses stood.    The purchase was thereupon consummated, and the ice business was continued as before, Mrs. Place receiving $10 per year as rent for the ice-house property for the remaining two years of the lease, and at that time she executed a deed of the same according to the evident understanding of all the parties, for a consideration of $300.    The land conveyed was about one acre in amount, situated upon the bank of the pond, and the price received by her for it was evidently many times its actual value, and the large price paid for it was clearly because its value was enhanced by reason of the ice business, and for which use it was intended.    The ice business, as established, was continued thereafter, and without objection from any one, until near the time when the bill was filed in this case. The property acquired, as stated, for ice-house purposes, through different conveyances, also became vested in the complainants, including the rights conveyed to Isaac P. and Anson Hoag by Goodrich.

There has never been any concealment on the part of complainants, or on the part of any one from whom they

have derived title, of the claim which they made and still make to the ice. Their occupation and use of the pond for that purpose has been open and notorious. The lease to Goodrich, as well as the conveyances in the chain of the Dexter title, under which the complainants claim, have been recorded from time to time in the office of the register of deeds for Ionia county; and, in addition, Laura Place, and at least some of her heirs, and who are defendants in this suit, were fully advised of all that was being done from time to time, as well as of the claim made by the owners of the Dexter title, and not only made no objection to it, but by leasing and selling property to be used in connection with the business as then established and being carried on, as well as by buying ice from and engaging in the employment of those who were conducting the business, acquiesced in the claim made by them to the exclusive ownership and use of the ice forming from time to time on the pond. Some of the conveyances were made with special reference to the value of the ice business, and the bill alleges that when complainant Mansfield purchased his one-half interest in the ice-house property and business, paying $2,000 therefor, he did so with the honest belief and understanding that he thereby became the owner of the undivided one-half of all the ice which would form from year to year on the pond, as well as of one-half the ice business which had been established in connection there-with.

The bill also alleges that the defendants, as heirs of Laura Place, claim that, because they are the owners of the fee of the land covered by the waters of the pond, they are the owners of the ice forming from year to year upon its surface, and the court is asked for a decree settling the rights of the parties as to the ownership of the ice, and to restrain the defendants from laying claim to or interfering with it. The answer generally denies that the complainants, either through the

Dexter chain of title or by long-continued use of the property in the manner stated, have any right or title to the ice, and denies that, under all the circumstances of this case, defendants are estopped from claiming that they, as the owners of the fee, are entitled to it.

It may be considered as settled law in this State that the owner of the soil under the water is ordinarily the sole and exclusive owner of the ice forming upon such water, and that his riparian ownership of the bed of a stream will carry with it the right to the ice forming upon the surface of such stream as far as his riparian right to the soil extends. This doctrine is fully established in *Lorman v. Benson,* 8 Mich. 18; *People's Ice Co. v. Excelsior,* 44 Id. 229; *Clute v. Fisher,* 65 Id. 48; *Bigelow v. Shaw,* Id. 341. We reaffirm the principle established by these cases, and this controversy could be easily disposed of if there were no other questions to be considered except the abstract proposition urged by the defendants,—that they, as owners of the land covered by the waters of the pond, are entitled to the ice forming upon its surface. But there are other and more serious contentions in reference to the extent of the grant in the Dexter deed, and the construction to be placed upon it, and also in reference to the prescriptive and other rights acquired by the complainants in the subject-matter of this suit, in consequence of the acquiescence of the defendants, and of those through whom they obtain title, in the claim which complainants have made for many years, and are now making, as to the ownership of the ice in question. These become important questions, which must be given fair consideration in the determination of the rights of the respective parties to this litigation.

Under our view of this case, as it appears to us in the light of all the facts and circumstances surrounding it, we are not called upon to construe the Dexter deed, or to decide upon the extent of the right conveyed by it. The parties have themselves construed it, and, except when there has been

mistake or fraud or concealment of important facts, courts should not give a construction to a deed in direct conflict with that which the parties have themselves put upon it, especially after such construction has been in force and assented to by all the parties for a period of time long enough to create prescriptive rights and equities under the statutory limitations of the State. And this is so even when the terms employed in the deed are doubtful. When a water easement is granted in general or indefinite terms, rendering the construction doubtful, contemporaneous acts of the parties, giving a practical construction /to the grant, will be deemed to express their intention. Gould, Waters, § 318a, and cases cited; *Mudge v. Salisbury*, 110 N. Y. 413, 417 (18 N. E. Rep. 249). Where the uniform and continued acts of the parties for many years have placed a construction upon a contract or deed of conveyance, the court will give effect to the contract or deed as the parties themselves have construed it. *Johnson v. Gibson*, 78 Ind. 282; *Reissner v. Oxley*, 80 Id. 580; *Lyles v. Lescher*, 108 Id. 382 (9 N. E. Rep. 365); *Kingsland v. Mayor*, 45 Hun, 198. The same general doctrine is laid down in *Fitzsimons v. Foley*, 80 Mich. 518.

Applying this principle to the facts of this case, it is clear that the right to the ice forming on this pond from year to year is in the complainants. The evidence shows conclusively that, ever since the ice in question has been of any value, the owners of the Dexter title have always claimed the ice forming upon the pond, and have exercised the right to cut it and dispose of it as their own. They have done so openly and without opposition from any one. They exercised and enjoyed this right uninterruptedly for more than 15 years before the death of Laura Place, with her full knowledge and consent, and she rented and sold some of her own land at a large price, to furnish them with better facilities to carry on the ice business.

Acting upon her open acquiescence in the claim which complainants make to the ownership of the ice, a large amount of money was invested in the business.  Sales and transfers of portions of the ice business and property were made from time to time with the fullest acquiescence on the part of Laura Place in the fact that the owners of the Dexter title were the owners of the ice forming on the pond, and no objection was at any time made by her to this claim.  She would certainly be estopped from denying complainants' right, and her heirs have no more rights than she owned at the time of her death, and cannot be heard to assert a claim which she, if alive, could not assert.

In giving the construction to the deed which the parties gave to it, and for a period exceeding 15 years, the complainants have acquired a prescriptive right to the ice in question.  A grant to them is implied, for, in order to establish a right or easement in the lands or waters of another, it is only necessary that the enjoyment be adverse and under a claim of right, and with the knowledge of the owner.  That it be contrary to the interests of the owner, and of such a nature that it is difficult to account for it except on the presumption of a grant from him; and that it has continued in that manner for the period of limitation fixed by the statute; and the knowledge of the exercise of this right in the manner stated is binding, not only on the owner, but his grantee as well.  The adverse and uninterrupted use and enjoyment of an easement of this character, in the manner stated, for more than 15 years under a claim of right, and with the knowledge of the owner, is strong ground on which to found the presumption of a grant, and, when unexplained, it is presumed to be under a claim of right, and adverse, and is sufficient to establish a title by prescription.  Gould, Waters, §§ 334, 335, 341, and cases cited.

We cannot agree with defendants' contention that complainants have, if at all, only acquired prescriptive rights in the ice forming on such parts of the pond as they have actually cut upon. It has never been treated in that way. They, and those from whom they derive title, have claimed the right as extending over the entire pond, and they have cut and gathered ice at any point or points they chose without objection from any one. This claim, too, has been made under color of title. The Dexter deed gave the right to the flowage which creates the pond, and, whether or not the deed conferred the right now contended for, yet it would be idle to say in this case that it was not even a color of title, when it is clear that the parties themselves agreed that it was not only a color of title, but an actual title, and when able and learned lawyers, after much thought and attention, honestly disagree as to whether or not it actually conveys the right claimed for it by complainants. It is sufficient to say that the court must treat it as the parties themselves did, and as relating to the entire pond, and not to any parts or portions of it.

It follows that the decree of the court below, dividing the ice upon different parts of the pond between the respective parties, must be reversed, and a decree will be entered here in accordance with this opinion, settling the ownership of the ice in the complainants, and restraining the defendants from interfering therewith, as prayed for in the bill. Complainants will recover the costs of both courts.

The other Justices concurred.