The Hughesville Water Company, Owner, and the Hughesville Electric Light and Power Company, Lessee, Appellants, *v.* Clarissa V. Person, Charles Person and David Osler.

*Waters—Riparian owners—Statute of limitations.*

Where several factories had been established nearly a century ago along a branch stream separated from the main stream by an island, and for over twenty-one years the upper owners have regulated the head-gates of a low dam which had been built across the main stream to regulate the flow of the water in the branch, and have controlled and operated the gates according to the necessities of their own business, without reference to the need of the lower owners on the stream, but without depriving them of water, such upper owners have no right to turn the water into the main stream so as to cut off the supply, at night or at any other time, from one of the lower owners; although the predecessors in *title* of such owner' may have used very little of the water for some years, and may have never used it at night. The right of the upper owner is to use, not to destroy the use by the others.

*Quære* whether a mere right to do wrong without advantage to the wrongdoer can be acquired by any lapse of time.

Argued March 15, 1897. Appeal, No. 483, Jan. T., 1896, by plaintiffs, from decree of C. P. Lycoming Co., June T., 1892, No. 2, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for an injunction to restrain the obstruction and diversion of water.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to master's re-port, and in dismissing bill.

*W. C. Gilmore* and *Andrew A. Leiser*, for appellants.—Whether the stream in question is natural or artificial the law is the same as to the rights of the riparian owners: Angell on Water-Courses, sec. 90; Gardner v. Newburgh, 2 Johns. Ch. 162; Wheatley v. Baugh, 25 Pa. 528; Johnson v. Jordan, 2 Metcalf, 239; Miller v. Miller, 9 Pa. 74.

The master has found that "so far as priority of right in point of time is concerned there is no distinction" between the rights of plaintiffs and defendants, "both being ancient rights." But if it be assumed that the defendants and their predecessors in title were the first to use the water of this stream, such priority of occupation and use confers no exclusive right: Tyler v. Wilkinson, 4 Mason, 397; Heath v. Williams, 25 Maine, 209; Sampson v. Hoddinott, 1 Com. Bench, (N. S.) 608; Buddington v. Bradley, 10 Conn. 213; Crossley v. Lightowler, Law Rep. 3 Eq. 296; Angell on Water Courses, sec. 92*a*; Townsend v. McDonald, 2 Kernan, (N. Y.) 381; Pillsbury v. Moore, 44 Maine, 154; Thurber v. Martin, 2 Gray, 394; Wright v. Howard, 1 Sim. & Stu. 190.

No actual injury need be shown in order to support an action for damages: Del. & Hudson Canal Co. v. Torrey, 33 Pa. 143.

Plaintiff's right of action being indisputable, the proper forum in the present case is equity, and the proper remedy an injunction: Hoy v. Sterrett, 2 Watts, 327; Holsman v. Boiling Spring Bleaching Co., 1 McCarter, 335; McCallum v. Germantown Water Co., 54 Pa. 40; Bitting's App., 105 Pa. 517; Hetrich v. Deachler, 6 Pa. 32.

No matter what were the necessities of the defendants' business, they had no right to convey the water out of its course to the prejudice of the plaintiffs' rights: Haupt's App., 125 Pa. 211; Clark v. Penna. R. Co., 145 Pa. 438; Wheatley v. Chrisman, 24 Pa. 298.

*W. E. Crawford*, for appellees.—The master has found the facts against the plaintiffs, and the court below has approved his finding. Under such circumstances it has been the uniform course of this court not to reverse: Kisor's App., 62 Pa. 428;

Gibbons v. Gibbons, 175 Pa. 475; Stocker v. Hutter, 134 Pa. 19; Brotherton v. Reynolds, 164 Pa. 134.

Every riparian owner is entitled to use the flow of water through his land, although the owner of a mill below may be in some measure injured thereby: Strickler v. Todd, 10 S. & R. 63; Whaler v. Ahl., 29 Pa. 98; Hartzall v. Sill, 12 Pa. 248.

OPINION BY MR. JUSTICE WILLIAMS, October 11, 1897:

This case presents an interesting question. Fortunately the report of the learned master furnishes us with the facts in a very clear and orderly manner, and if his general theory of the situation and rights of the parties be adopted his legal conclusions seem well drawn.

Let us look first at the relative situation of the parties and their rights as riparian owners. We shall then understand the complaint made by the plaintiffs, and be able to determine the sufficiency of the answer made, and of the theory upon which the case was tried and decided. A considerable stream known as Muncy creek flows southerly past the borough of Hughesville to the west branch of the Susquehanna river. Not far from Hughesville its waters are separated so that for some hundreds of rods a channel carries a portion of the water at some little distance from the main stream and then returns to and unites with it again. The smaller, easternmost channel, was taken possession of by riparian owners for manufacturing purposes early in the present century. Four manufacturing plants have been maintained along it for many years. Those of the defendants are near the beginning of this short channel. That of the plaintiffs is near the place of its return to the main stream. There is another intermediate one owned by parties who are not on the record in this case.

To increase the flow of water from the main stream through the branch or arm on which the factories were located a low dam had been thrown across it, the purpose of which was to secure the even flow of a sufficient body of water to the factories to provide them with the power needed. The residue of the water of the stream would pass over the low dam and follow the bed of the main stream. Head gates were put into the smaller stream above the upper mill or factory by which in times of high water the surplus current would be shut out of it

and turned back into the stream, leaving the volume passing down to the factories practically undisturbed. The dam, the head gates, and the waste ways along the branch, called a "race" by the witnesses, were put in place many years ago. It is not definitely known just when, or under what arrangement, this was done. The upper owners, being near the head gates, were looked to for the care and handling of them for the purposes for which they had been erected,—the regulation of the flow of the water so as to preserve uniformity of volume for the use of the successive factories along its banks.

Each of these riparian owners had an equal right to the use of the water, and an equal right to insist that its volume should not be lessened or its flow interfered with except as the necessary consequence of its use by owners above him. The upper owner could not turn the water back into the main stream at his own pleasure, and so deprive the lower owners of its use Such conduct would not be the exercise of his right as a riparian owner, but a wanton disregard of the rights of his neighbors below him. His right was the right to use, not the right to destroy the use of his neighbors, and it is by no means clear that he could acquire a prescriptive right to vex or injure them by practices not connected in any manner with his own use of the water, no matter how long the injurious practices may have been continued. What is acquired by prescription is the right to some benefit, privilege or property which has been enjoyed so long as to raise a presumption that its enjoyment began in consequence of a grant now lost. The commission of acts injurious to another, and which give to the perpetrator no benefit, privilege or property, would hardly be justified by the plea that the defendant had habitually for more than twenty-one years been guilty of doing the same wrong to the same person. Moreover the occasional exercise of a power over the lands or property of another during a period of twenty-one years is not enough to make title by prescription or limitation. The exercise of the power must be continuous, uniform and adverse. The occasional theft of a timber tree from the lands of one's neighbor could not, no matter how long continued, confer a right on the thief to take away a timber tree at his pleasure. If, however, he goes upon his neighbor's land and remains in open, continuous, adverse possession for the requisite time, he will acquire title

to the land and the timber upon it.   There must be something
to call the attention of the owner to the adverse claim, such as
an invasion of the possession of land, the assertion adversely to
himself of a right, and the like : Cooper v. Smith, 9 S. & R. 26 ;
Demuth v. Amweg, 90 Pa. 181 ; Dexter v. Tree, 117 Ill. 532.

In case of a claim to use the water of a stream, it was held in
New Jersey that it must. appear that the acts that are the basis
of the claim were injurious to the plaintiff, and gave to him or
those under whom he claims title a right of action : Holsman
v. The Boiling Spring Co., 14 N. J. Equity, 335.

The alleged user relied upon as furnishing the basis of a title
by adverse possession must be adverse and continued as against
an owner who is in life, and sui juris.   A lunatic or one under
any legal disability is not affected by an adverse entry or pos-
session : Reimer v. Stuber, 20 Pa. 462.   The same must be said
of acts that do not bring to the knowledge of the owner, either
actually or constructively, the assertion of any right adverse to
him.   Neither the clandestine taking of water from a neighbor's
well for more than twenty-one years nor the taking by his permis-
sion for an equal length of time will confer any right upon the
taker.   The statute runs from the time when the owner is, or
with proper attention to his own property should be, warned of
the adverse claim set up.

Let us now ascertain just what is alleged in the bill as the
ground for relief.   Substantially it is that the plaintiffs are
riparian owners upon the branch of Muncy creek which was
many years ago supplied with a sufficient and uniform flow of
water by means of the dam across the main stream and the head
gates in the branch.   That they have a right to the uninter-
rupted flow of the water to and along the banks of the branch
on which they have valuable machinery and buildings erected
to supply the borough of Hughesville with water and with elec-
tric light.   That the defendants interrupt this uniform flow of
the water down the branch to them, by practically closing the
head gates above their mills, thus turning the water when not
wanted by themselves back into the main stream.   That, in
consequence of this practice and of an increase in the height of
the waste way by the use of a splash board upon it, the flow of
the water is so reduced as to render it impossible at times for
them to move their machinery or make any use of the small

amount of water that is permitted to flow down to them. This, if true, is a serious injury to the plaintiffs, for relief against which they have a clear right to come into a court of equity. The defense rests upon a claim of right which the master seems to adopt. In his ninth finding upon controverted questions of fact he reaches this conclusion, " That the defendants and those under whom they claim, for a period of twenty-one years and upward before the time of filing the bill in this case, have controlled and operated the head gates above their plants according to the necessities of their mills, and without reference to the needs of the lower owners on the stream." The legal conclusion which the decree requires should follow, is that because the defendants have paid no attention to the rights of riparian owners below them heretofore, they have now acquired the right as matter of law to disregard them for all time to come. There is nothing on this record to justify such a conclusion, and it is wholly unwarranted. The character of the business done at all four of these manufacturing establishments prior to the purchase by the plaintiffs may have been such as to require the flow of the stream only in the day time. The turning it back into the main stream at night may have been of no consequence to any of them, and may not have attracted attention, for that reason. They all had the right to the flow of the stream by night as well as by day if it was important to them; and until it did become important there was nothing to call their attention to the claim of right now set up by the upper owners to turn it back. But turning the water back is not a use of the stream. It is an obstruction of it. It does him who makes the obstruction no good. It does great harm to any lower owner who wishes to use the flow of the stream, as he has a clear right to do, for propelling his machinery. If a right to do wrong to others could be acquired by limitation, the period of limitation would not begin to run in this case until the lower owner could be fixed with notice of the claim of the owner above him to withhold from him the uninterrupted use of the stream. No evidence of such adverse act to the plaintiffs or their predecessors in title is pretended. It is said that the water was but little used by the predecessors of the plaintiffs for some years before their sale to them. This is wholly unimportant. The right of user to the extent of all the water flowing, whether by night or

day, existed, and by the sale passed to and vested in the plaintiffs. The volume passing down to the plaintiffs when the head gates were open was, as appears by the testimony, equal to three thousand three hundred and sixty-three square inches. With the gates as they were kept by the defendants for considerable periods of time this was reduced to eight hundred and ninety-two square inches, or about one quarter the amount of water which the stream was capable of furnishing. The disastrous effect of such a reduction of the supply at the plaintiff's works is apparent. The fact that such a reduction has been made at times is not seriously denied. On the other hand the right to make it and to handle the head gates as the defendants please is the only serious effort at defense that the case discloses. It must not be overlooked that the right claimed by limitation here is not a right to use by the defendants for their own benefit or profit the waters of the stream as they come to them, but the right to obstruct their flow and so to destroy the title of the lower riparian owners. This appears very clearly by the declarations of Mr. Person, one of the defendants. When asked by John Andrews, one of the witnesses, why "he did not give the boys water last night?" His reply, not denied by himself when on the witness stand, was "I don't care a d—n whether Hughesville has light or water." This was an admission of his shutting off the stream at the head gates, and a declaration that he did not care for the consequences to others, of his conduct in so doing. For such conduct the only justification set up is the assertion of a right thus to destroy the business of his neighbors and subject the public to the consequent inconvenience and injury. Such a right, if it could have an existence, would not be readily accepted in a court of equity, which is a court of conscience; and would not be tolerated as a defense for the conduct alleged in this case, unless every requisite of a title by limitation was shown with the utmost clearness and certainty.

If all this was done there yet remains the question whether a mere right to do wrong, without advantage to the wrong doer, can be acquired by any lapse of time.

The decree is reversed. The preliminary injunction is restored and the record remitted for further proceedings in accordance with this opinion. The costs of this appeal to be paid by the defendants.