WALTON CRANBERRY CO. *v.* SEAMON.

1. WATERS AND WATERCOURSES—FLOWAGE—PRESCRIPTION—LIMI-
TATION OF ACTIONS.
    Rights of flowage may be gained in this State by prescription.

2. SAME—DAMS—MARSHES—EVIDENCE.
    Evidence that complainants and their grantors, in possession of
    a cranberry marsh, cultivated the plants for upwards of 25
    years, employing a dam on an adjacent stream or creek to
    flow the marsh at intervals, and flooding defendant's lands,
    as an incident of their use, corrobated by testimony of nu-
    merous witnesses showing the existence of the cranberry
    marsh and methods of culture at several distinct periods,
    supported a finding that complainants had secured prescrip-
    tive rights, although no witness could testify to continuous
    occupation throughout the statutory period.

3. SAME.
    Mere difference in methods of using the water, imposing no ad-
    ditional burden on defendant and not harming him, did not
    constitute such a change of user as to break the continuity
    of complainant's prescriptive right.

4. SAME—PRACTICE—ACCOUNTING—DAMAGES.
    In the course of a hearing on a bill to restrain interference
    with complainant's dam and right of flowage, it was not er-
    roneous to receive evidence upon the question of damages
    caused by defendant who offered no objection to such
    action.

Appeal from Wexford; Lamb, J.    Submitted January
19, 1912.    (Docket No. 118.)    Decided July 11, 1912.

Bill by the Walton Cranberry Company against Isaac
N. Seamon and Lieu P. Haskins for an injunction, dam-
ages, and other relief.    From a decree for complainant,
against defendant Seamon, and dismissing the bill as to
defendant Haskins, defendant Seamon appeals.    Affirmed.

*Colin P. Campbell,* for appellant.
*Gaffney & Miltner,* for appellee.

MOORE, C. J.   This suit was commenced for the purpose of obtaining an injunction requiring the defendants to remove an obstruction in the nature of a dam built by them across a stream of water, known as the "Little Creek," at a point about 40 rods south of a dam across said creek, owned by complainant, and to obtain a restraining order prohibiting the defendants from placing any obstruction in said creek that would interfere with the flow of water released from the dam of the complainant, and for damages.   The hearing was had in open court on pleadings and proofs, at the close of which the bill of complaint was dismissed as to the defendant Haskins, and a decree made restraining the defendants from maintaining said dam or placing any other obstruction in said creek that would interfere with the operation of the dam of complainant in using the waters of said creek in the cultivation of cranberries above said dam, and a judgment was also rendered against the defendant Seamon in the sum of $1,000 damages, from which decree the defendant Seamon appeals to this court.

It is the claim of the complainant that it has gained a prescriptive right to make use of the waters of said creek to flood its marsh as it becomes necessary in the cultivation and culture of cranberries, and to drain the water from the marsh into the creek by raising the slashboards of its lower dam at the proper time.   On the other hand, the defendants contend that the complainant has not obtained the prescriptive rights claimed, and that they were acting within their rights in erecting the dam on their lands.   Their answer is in the nature of a cross-bill, and makes the further claim that they were greatly injured by the flooding of their land, by reason of which they were damaged, and asks for an injunction restraining the further flooding of said land.

The circuit judge found that in the year 1885 De Witt C. Leach became the owner of a part of the lands now owned by the complainant, and particularly that portion known as the cranberry marsh; that he then and there

began to prepare for the culture of cranberries, and planted a part of the lands to cranberry vines, and then there erected a dam across the "Little Creek;" that said dam has been maintained and used continuously by De Witt C. Leach and his assigns from the said year 1885 until the date of this trial in the propagation and culture of cranberries on the marsh in question, and that such use has been continuous, open, and notorious; that said dam was erected and used by Mr. Leach and his assigns to hold water of said creek back on the cranberry marsh when necessary in the proper culture of the vines, and to release the water and drain the said marsh when the necessity for the water covering had ceased; that the water was returned to the creek before being released, and, when released by raising of the slashboards of the dam, the water drained from the marsh, and the vines were thereby uncovered; that up to the time when the marsh became the property of the complainant the water was always dammed onto the marsh in the fall of the year and released in the spring, but that the complainant has made use of the dam to cover the vines at any time during the year when necessary to protect the vines or the fruit, and to release the same when protection was no longer needed; that early in the year 1910 defendant Isaac N. Seamon became the owner by purchase of the N. W. ¼ of section 4, town 24 N., of range 9 W., and erected or caused to be erected a dam across the stream known as "Little Creek," about 40 rods south of the dam of the complainant; that the land between the dam of the defendant and the dam of the complainant is to all intents and purposes on about the same level as the land above complainant's dam, and is a continuation of the same marsh; that the defendant's dam, with the slashboards in, holds the water back on complainant's cranberry marsh, and interferes with and prevents the drainage of said marsh as required by cranberry culture; that in the month of May, 1910, the defendant by the use of his said dam backed the water up and penned it in upon

the cranberry marsh of said complainant, held it there to the damage of the said complainant in the weakening of vines, and the deterioration of the fruit in the sum of $1,000.

"That complainant has not without right flooded the lands of the defendant Isaac N. Seamon, and to whatever extent and in whatever manner the complainant has drained its marsh into 'Little Creek' below its dam it has gained a right so to do by long, open, continuous, and notorious user. In the argument of the case the defendant has made the claim that the complainant is now employing, and has for some time employed, a different method of using the water in the culture and protection of the vines from that formerly made use of by its grantors, and that by making such change in its manner of using the water the complainant has broken the continuity of user necessary to give the right relied on. In my judgment it is the continuity of purpose and use rather than the continuity of the manner of using that should be the controlling factor in the decision of the question. Taking that view of it, the claim is without foundation. Some objection is raised to the maintenance of the upper dam by the complainant. As I view it, the use and maintenance of that dam is no concern of the defendant, if it does not interfere with the natural flow of the stream, and that it does not is conclusively shown by the testimony in the case, except as diverted for use on the cranberry marsh."

In our view, the important question in the case is one of fact. It is well settled in this State that the rights of flowage of lands may be gained by prescription. *Conklin* v. *Boyd*, 46 Mich. 56 (9 N. W. 134); *Gregory* v. *Bush*, 64 Mich. 37 (31 N. W. 90, 8 Am. St. Rep. 797); *Shearer* v. *Middleton*, 88 Mich. 621 (50 N. W. 737); *Cornwell Manfg. Co.* v. *Swift*, 89 Mich. 503 (50 N. W. 1001); *Hoag* v. *Place*, 93 Mich. 450 (53 N. W. 617, 18 L. R. A. 39); *Williams* v. *Barber*, 104 Mich. 31 (62 N. W. 155).

This is not seriously questioned by appellant, but he makes the following claims:

"There has not been such an occupancy as would give rise to a perpetual right from the nature of the occupancy."

The argument is ( we quote from the brief ):

"It should be borne in mind that the rule which we are insisting applies to this case is that the erection of the dam was not an invasion of defendant's rights, because the dam would not necessarily *ex proprio vigori* interfere with the defendant or his property. It required the intervention of some human agency to make it an interference with defendant's right. The invasion of such right was the closing of the flume and the holding back of the water, or the opening of the flume and the letting down the water the act of some trespasser, and not the erection of the dam. Now, I insist that each time either of these things was done a new trespass was committed, plaintiff's right was then interfered with, and a new cause of action arose, not because of the dam, but because of the trespass and the act of the trespasser who caused the holding of the water or who permitted it to come down, and the right of action would date from each trespass, for the trespass, not to eject an intruder, or to recover possession, but to recover damages for the trespass. *Hughesville Water Co.* v. *Person*, 182 Pa. 450 [38 Atl. 584]; *City of Augusta* v. *Lombard*, 101 Ga. 724 [28 S. E. 994]; *Athens Manfg. Co.* v. *Rucker*, 80 Ga. 291 [4 S. E. 885]; *Chicago, etc., R. Co.* v. *Willi*, 53 Ill. App. 603."

An examination of the cases cited show they are quite unlike the instant case. The facts disclosed by this record show the argument is not well taken. It is shown by direct proof and fair inference that as early as 1884 the systematic culture of cranberries was commenced on the lands now owned by complainant; that as early as 1885 the lower dam of complainant was erected for the purpose of controlling the water in the stream, so that the cranberry plants might be covered and uncovered with water as the exigencies of the crop demanded. The marsh continued to be improved and planted until now it is valued at upwards of $30,000, and the water has been used as above indicated for more than 25 years. It is claimed by defendant (we again quote from the brief):

"The occupancy has not been continuous, conceding that by continuity of occupancy is meant occupancy at stated periods or occupancy at stated seasons. Complainant must show clearly and by a preponderance of the evidence that they have occupied defendant's premises continuously, and a decree in their favor ought not to be based upon inference or speculation."

Counsel then proceed to argue that no witness was able to say that there had been an occupation every year throughout the statutory period. It is true that no witness was so able to testify, but so many witnesses testified in relation to different years, and the dam remaining there all the while and the cranberry plants remaining there all the while, and showing intelligent culture, that the positive proof and the inferences fairly to be drawn therefrom satisfies us as it satisfied the trial judge of the continuous occupancy. See *Cornwell Manfg. Co.* v. *Swift*, 89 Mich., at page 519 (50 N. W. 1001).

It is claimed that the occupancy has not been continuous in the manner in which the right to occupy is now claimed. This argument is directed to the method of using the water now, being different from what it was at the outset. While it does differ in details, it is clear that the difference is not harmful to defendant, and does not put any additional burden upon his land.

The final claim of the appellant is (we again quote from the brief):

"The decree finds damages in favor of the complainant. The correct practice was not followed in this case. Equity practice does not authorize a hearing on damages at the same time with the hearing on the merits. The practice is to establish the right to relief at the hearing, and enter an interlocutory decree with the reference thereupon if complainant sustains his case, to determine his damages. Barbour's Chancery Practice, pp. 327, 468; *Kinter* v. *Pickard*, 67 Mich. 125 (34 N. W. 535); Lube's Equity Pleading, §§ 132, 140; Barton Suit in Equity Title Reference. This is the practice that we relied upon, and upon this practice we had a right to rely. We seasonably objected to going into the question of damages (R. 63)."

A reference to the record does not sustain this claim of counsel. We quote from the record:

"I considered that the thickening of the grass on the marsh, the covering of our vines with swamp grass, has injured us at least $1,500. The retarding, the thickening up of the marsh, has prevented us getting a full crop by one full year, and our loss in that way is not less than $3,000. The difference between the crop we got and also the loss of this year's crop that was drowned out I believe to be between $1,200 and $1,400.

"*Mr. Campbell:* We ask to have all that stricken from the record as wholly immaterial, and not the proper measure of damages.

"*Q.* Now you intimate that the thickening of the grass on the marsh has lessened the value of the land?

"*A.* Yes.

"*Q.* How much, if any, has the value of the land been lessened by reason of the killing of the vines? (Defendant objects as immaterial.)

"*A.* I cannot tell you how many vines were killed, but it is a serious matter indeed, and I presume the killing of the vines has hurt us between $1,000 and $2,000, but I haven't made a careful enough examination of the vines to state that so positively as the other points."

One of the prayers of the bill was as follows:

"That an accounting may be had at the hearing and the damages suffered by complainant by reason of the erecting of said dam and the raising and backing up of said water over and upon the said lands, and a decree therefor be rendered in favor of complainant and against said defendants."

Testimony was offered to show what the damages were. We can see no reason for not entering upon that inquiry at the hearing. If any one has reason to complain of the amount of the damages in view of the testimony upon that point, it is not the defendant.

The decree is affirmed, with costs.

Steere, McAlvay, Brooke, Stone, and Ostrander, JJ., concurred. Blair and Bird, JJ., did not sit.