. FELTON *v.* WEDTHOFF.

1. INJUNCTION—BOND—STATING ACTION AT LAW—PRELIMINARY IN-JUNCTION.

A bond to secure the defendant in an injunction bill against damages which may be sustained by the issuance of an order restraining the further prosecution of an action at law under 1 Comp. Laws, § 502 (4 How. Stat. [2d Ed.] § 12020), is not required in the case of a permanent injunction issued by the final decree of the court in such proceeding. The statute has reference to the preliminary injunction which may be issued upon the filing of the bill.

2. PRESCRIPTION—RAILROADS—PAYMENT—PRESUMPTIONS.

On review of evidence in a suit to quiet title to an easement in property which formed a part of the right of way of a railroad company in a public street, also for the purpose of restraining defendants against the prosecution of an action at law for damages as abutting property owners, testimony considered and *held*, to raise a presumption of fact that the defendants, as well as other property owners similarly situated, had received compensation for any direct injury to their interest in the real property.

3. STIPULATIONS—RAILROADS—RIGHT OF WAY—INJUNCTION SUIT—RESTRAINING ACTION AT LAW—QUIETING TITLE.

Under a stipulation of the parties to an injunction bill

limiting the issue to the question of defendants' damages for the taking of a right of way in a public street by a railroad company, the defendants were prevented from contending that the complainant was asking the court to restrain a recovery of damages because of negligence or carelessness of the railroad company, and that they were not therefore in court with clean hands as required by the rules of equity.

4. RAILROADS—PRESCRIPTION—RIGHT OF WAY—INJUNCTION BILL.

In sustaining a claim by a railroad corporation to title in a public street by prescription, evidence tending to show that the city had authorized its occupation of the street and had frequently renewed or ratified the original action, and recognized the existence of such right in the corporation for a period of more than forty years, during which time the railroad had contributed taxes for special improvements and maintained crosswalks, there was no room for the contention that occupation of the highway amounted to a public nuisance.

5. SAME—NUISANCE—PUBLIC NUISANCE.

The occupancy of a public street by a railroad company for a period considerably in excess of the statutory period, with the consent of the public authorities of the municipality, even if amounting to a public nuisance, might operate to pass title to an easement in the street as against the private rights of abutting property owners.

6. SAME—HIGHWAYS AND STREETS.

Prescriptive rights may be acquired in this State to an easement in a public street.

7. SAME—LACHES.

By sleeping upon their rights for a period of about forty-five years, the abutting owners upon the street occupied by a railroad corporation for purposes of its right of way lost any right which they may have had to the recovery of damages to their realty by reason of any increase in the servitude of the public easement.

8. SAME—TITLE BY ADVERSE USER.

There is no doubt in this State that a private nuisance may become legalized by prescription.

Error to Bay; Collins, J. Submitted January 8, 1915. (Docket No. 33.) Decided March 18, 1915.

Bill by Samuel M. Felton and others, as receivers of the Pere Marquette Railway Company, against George E. Wedthoff and others, to restrain the prosecution of actions at law commenced against the Pere Marquette Railway Company and to quiet title. From a decree for complainants, defendants appeal. Affirmed.

*Bills, Parker & Shields* (*Gillett & Clark*, of counsel), for complainants.

*Joslyn & Houghton*, for defendants.

STONE, J. For a clear statement of the questions and issues involved in this cause we here insert, in full, the opinion of the learned circuit judge who heard the case below:

"In this equitable action the complainants have filed a bill of complaint against the defendants to restrain them from the prosecution of a certain action at law for damages, brought by the defendant Wedthoff, as assignee of the other defendants, against the Pere Marquette Railroad Company. The complainants stand for the Pere Marquette Railroad Company which company succeeds to the rights of a railway company organized in 1867, which was succeeded by the Flint & Pere Marquette Railroad Company, the Flint & Pere Marquette Railroad Company being succeeded by the Pere Marquette Railroad Company. These various parties have a continuity of interest and succession of occupation, and will be described hereafter as the company, which term includes said companies and the complainants herein.

"The defendant George E. Wedthoff is a plaintiff in an action at law, as above stated, commenced by him on the 11th day of August, 1911, as assignee of the right of action of some 43 property holders owning property abutting on James and Jefferson streets in Bay City. These parties will be hereafter designated as the property holders. Mr. Wedthoff and the property holders filed an answer in the nature of a cross-bill to the said bill of complaint, contesting the complainants' claims and asking that their claims for

damages as abutting property holders be heard, determined, and assessed in this suit.

"James and Jefferson streets, in Bay City, were established as legal streets therein prior to 1866. In February, 1866, pursuant to proceedings before that had in the common council, the company was granted the right to construct, maintain, and operate its railway upon and along James street and Jefferson street to a point north of all of the land on said street owned by any of the defendants. The company commenced the construction of its railroad upon a right of way laid along the center of said James and Jefferson streets, and completed its construction of said railway going north to a point north of any of the land of the defendants on or prior to the 20th day of May, 1868, since which time until the present time the company has operated its railroad through the use of said track in and on said streets to carry on its railroad business, and during this time its track has been laid upon land of the property holders at the east or west sides thereof, as the case may be, to the extent of from three to five feet.

"As between the company and the property holders, and in respect to all of the property holders, the company on or before May 20, 1868, appropriated the described right of way in the center of the street upon their land, and since that time and up to the commencement of said suit, for a period of more than 42 years, it has occupied said right of way and maintained its track and operated its trains along the same, and for said period of more than 42 years prior to the commencement of said suit it has had actual, adverse, peaceable, open, and uninterrupted possession of said real estate, except as qualified by the city street use, and in that time has used its said track upon said right of way.

"The distinct claim of each of the defendants is for abuttal damages for the six years prior to said August 11, 1911, on the theory of the defendants that for prior years their claims are barred by the statute of limitations.

"This claim is valid, and the defendants are entitled to such damages, unless the company, either by grant or by prescription, prior to the time of the commencement of suit, acquired the legal right to the use of

said right of way, or, in other words, acquired an easement upon the land of the property holders occupied by it.

"Preliminary to the statement of the main question in the case, it may be said in passing that it is an elementary principle of law that an easement may only be created by grant or by prescription, and that in law the grant of the right of way to a railroad company creates an easement on the land affected, and that an entry upon the land of another by a railroad company, followed by the construction and operation of a railroad upon such right of way, without first obtaining a grant therefor or taking such steps to condemn the land for such right of way, is an appropriation of the right of way such as to afford a right of action for abuttal damages commencing with the time of such appropriation.

"The controverted claims of the parties follow:

"(1) That it has paid for and obtained releases of the right of way from the property holders, and has a grant to said right of way.

"(2) That, if it did not obtain such grant, then prior to the time of the commencement of said action at law by the property holders, it had acquired a prescriptive easement upon and along the land covered by its track, and that therefore the property holders could not maintain its said action for damages.

"The property holders claim:

"(1) That the company has no grant of said easement.

"(2) That there can be no prescriptive easement acquired by a railroad company in a city street to defeat the claim of adjacent property holders for abutting damages.

"(3) That the company, not having acquired a grant or prescriptive easement, has been liable for continuing damages from May 20, 1868, during the whole of said period, and that the damages for that portion of said time, namely, 6 years, not barred by the statute of limitations, can be recovered in said action at law.

"It may be said in explanation of the two periods named, that the 15-year period is the period fixed by the statute of limitation affecting real estate as being the time required to acquire by adverse possession

easements and rights in real estate. The 6-year statute of limitations is that statute which precludes an action of damages, such as said suit at law, from being maintained for damages which accrued 6 years prior to the statute of limitations.

"Upon the disputed questions, I am constrained to hold that in this State an easement upon land for the operation of cars thereon in a public street may be acquired by prescription, and that the time for the acquirement of a prescriptive right commences to run from the time of the commencement of the appropriation of the right of way, where such right of way is appropriated; that as applied to this case, under the facts stated, such time commenced to run on the 20th day of May, 1868, and that the property holders' right of action for abuttal damages was barred by the prescriptive easement of the company on the land long before the commencement of said suit at law.

"This conclusion is sustained by numerous well-considered cases decided by our Supreme Court commencing with *Conklin* v. *Boyd*, 46 Mich. 56 (9 N. W. 134), and concluding with *Brockway* v. *Power & Light Co.*, 175 Mich. 339 (141 N. W. 693). These cases, either by express decision or by fair inference, decide that an easement may be acquired in real estate by fifteen years' use under the necessary conditions in principle clearly covering railroad right of way easements in streets and in no manner excepting them from such rule. I make particular reference only to the case of *Turner* v. *Hart*, 71 Mich. 128 (38 N. W. 890, 15 Am. St. Rep. 243), which has been often cited and quoted from, the opinion in which is by Judge CHAMPLIN. In that case the court states the reason for the rule of prescriptive easements and the rule as to easement by prescription, as follows: In this State an easement founded upon prescription originates from the fact of actual, adverse, peaceable, open, and uninterrupted possession for such length of time that the law presumes that the true owner by his acquiescence has granted the easement, and that the time required to fix said (prescription) presumption is the period named by the 15-year real estate statute of limitations, and that this 15-year period commences at the time when the adverse user or occupancy commences.

"The property holders contend that their claim that

no prescription for a railroad right of way can be acquired in a right of way in a city street in Michigan is supported by three Michigan cases, namely, *Grand Rapids, etc., R. Co.* v. *Heisel,* 38 Mich. 62 (31 Am. Rep. 306) ; s. c. 47 Mich. 393 (11 N. W. 212) ; *Hoffman* v. *Railroad Co.,* 114 Mich. 316 (72 N. W. 167) ; *Phelps* v. *City of Detroit,* 120 Mich. 447 (79 N. W. 640).

"In my opinion that question was not presented to the court or passed upon in either of the above cases. In the first two cases the time for acquiring a prescriptive easement had not run before the bringing of the suit; in the third case I am advised that the defense made in the case was of the statute of limitations, as against the right to bring that action, and no defense of the prescriptive easement was made in the case. I can therefore not consider these authorities as sustaining the position contended for, and in any event would be constrained to hold that the greater weight of authority was with the line of decisions, above referred to, holding the other way.

"The company contends that it has proved that releases of right of way were given within some reasonable time after the construction of the railroad in the said streets. This contention is denied by the property holders. I do not consider it, for the conclusions above reached dispose of the case.

"A decree may be entered dismissing the cross-bill of the property holders, and sustaining the bill of the railroad company, with costs to complainants."

The defendants have appealed from the decree entered pursuant to the foregoing opinion.

In their brief defendants urge that complainants ought not to be granted the relief asked for, for the following reasons:

(1) That they have asked for and obtained a decree for an injunction, as against defendant George F. Wedthoff, directly contrary to the provisions of section 502, 1 Comp. Laws (4 How. Stat. [2d Ed.] § 12020).

(2) That they have wholly failed to produce proof of any payment to or settlement with the defendants or their predecessors in title, and the court will not

presume payment in the absence of preponderating, or at least, some, proofs.

(3) That they have come into a court of equity, not to protect their rights to operate their railroad, which is not being questioned, but asking the court to prevent defendants from recovering actual damages inflicted, because of their negligence and carelessness. He who comes into equity must come with clean hands.

(4) That they are asking this court to declare a prescriptive right, founded, as shown by their own testimony, upon the operation of its road along a public highway without authority, contrary to the express provisions of law. The railroad, so far as being in the public street is concerned, has been a public nuisance from 1868 until 1899.

(5) That the permission of the council in 1899 is invalid until the railroad has made settlement with the property owners along the street, as provided by the only law in Michigan which authorizes a railroad to be built along a public street or highway.

(6) That to establish its prescriptive right the company asks this court, in effect, to set aside and reverse its rulings made in *Grand Rapids, etc., R. Co.* v. *Heisel,* 38 Mich. 62 (31 Am. Rep. 306), and 47 Mich. 393 (11 N. W. 212), and affirmed in *Hoffman* v. *Railway Co.,* 114 Mich. 316 (72 N. W. 167) ; *Wilkinson* v. *Dunkley-Williams Co.,* 139 Mich. 621 (103 N. W. 170), and *Phelps* v. *City of Detroit,* 120 Mich. 447 (79 N. W. 640).

(7) That they ask the first adjudication in the history of litigation that a railroad along a public highway, without authority, occupying not adversely or exclusively, but in common with the entire public, has acquired a title by prescription to injure and destroy defendants' property without compensation, when complainants have had it in their power to have the damages for all times determined, and when defendants have never had and have no right now to determine or have fixed any of the damages for the future.

(8) That to grant the relief prayed for and given by the court would be, and is, to say to these defendants :

"Under our repeated decisions you have never had any right to bring suit for the damages that may accrue to you in the

future; you have never had and could not have had a day in court for those damages. Because you have waived the past damages, you may not now recover the future damages."

These positions are very strongly stated, and, if supported by the authorities, defendants ought to prevail here. We think, however, that the positions taken by defendants are not all warranted under the authorities, as we find them.

1. We have never understood that the provisions of section 502, 1 Comp. Laws, requiring a bond to be given to have injunction to stay trial of action in a court of law, applied to a permanent injunction issued by the decree of the court at the hearing. We had supposed that it referred to preliminary injunction, and such we think has been the understanding of the profession. *Carroll* v. *Bank*, Har. Ch. (Mich.) 197; *Lawton* v. *Richardson*, 115 Mich. 12 (72 N. W. 988).

2. It is the position of defendants that complainants have wholly failed to produce proof of any payment to or settlement with the defendants or their predecessors in title. We have read very carefully the entire record in this case, and are unable to agree with defendants' position upon this point. The documentary evidence, taken in connection with the testimony, especially of the witness William Westover, shows strong circumstantial proof to the effect that appellants' predecessors in title were actually compensated for the right of way. The evidence is very convincing that at least some of the parties, who are in the same category as those represented here, were compensated. We think at least a strong presumption of fact has been raised that all who were in like circumstances were alike dealt with. It may be said that no one of the details is individually controlling, but in combination they create a very strong presumption of fact.

3. In the light of this record we hardly know what counsel for defendants mean by their third proposi-

tion.   Turning to the record, we find the following stipulation signed by the attorneys for both parties in the law case:

"That plaintiff claims no right to recover damages in this action for any misconduct or negligence of the defendant in the operation of its railroad, but merely for abuttal damages based upon the claimed occupation and use for railroad purposes of the highway in front of the above described premises."

Before the chancery case came on for hearing, a further stipulation was entered into between the parties, defining the main question at issue, and providing that it alone should be controlling.   This stipulation is very broad, and we quote only the following language, referring to the record for the remaining portion of the stipulation:

"In view of the fact that the proof of defendants' damages will necessitate the taking of voluminous testimony, with a needless waste of time and expense in case it should thereafter be determined that no such damages are recoverable, and that it is to the interest of all parties that their rights in respect to ownership, use, and occupation of Jefferson street (hereinafter referred to as the main question) be finally determined before the taking of any proofs on the question of damages."

The stipulation provides, then, for the taking of testimony with reference to the rights of the parties upon the main question and the submitting of those matters to the court for hearing and decree.   An examination of the decree entered in the court below will disclose that it does not assume to restrain actions for any negligence of operation, past or future.   The decree merely quiets, as to the defendants, the title to the Pere Marquette Railroad Company to a right of way down the streets in question, and provides against interference by defendants with the occupation of those streets as a right of way.   We

are unable to find anything in the decree that can be construed to prohibit actions arising out of past or future negligence of operation. Complainants assert, in their brief, that appellants are at liberty to commence any action which they see fit, based upon the ground of negligence or carelessness.

4. An examination of the record discloses that the railroad company constructed its road and has always operated it by permission of the public authorities of the city of Bay City. We are led to the conclusion that the permission granted was not only lawfully granted, but by the action of the council of the city has been renewed and affirmed and ratified upon numerous occasions. The important thing to be established is the existence of the municipal permission, not its validity; and even a tacit permission may be effectual, and in view of the operation of this road in the streets for upwards of 40 years with the consent and approval of the public authorities, and in view of the frequent and substantial contributions from the treasury of the company toward the maintenance of pavements, crosswalks, etc., many of them for the benefit of the abutting property owners, the claim that the railroad is, and always has been, a public nuisance cannot be sustained.

5. The consent of the abutting property owners has nothing to do with the validity of a public franchise as such. Even if the occupancy of the streets constituted a public nuisance, such occupancy would support an acquisition of prescriptive rights against individual abutting property owners. Courts of high authority have held that the rule against the creation of a prescriptive public nuisance must be limited to cases where the private person sustaining the injury, claims under and by virtue of the public right, and that a private nuisance may be prescribed for, notwithstanding the fact that it may be a public nuisance

as well.   See 21 Am. & Eng. Enc. of Law (2d Ed.), pages 733, 734, and the many cases there cited; *Charnley* v. *Power Co.*, 109 Wis. 563 (85 N. W. 507, 53 L. R. A. 895).   It follows, from the authorities above cited, that even if this railroad constituted a public nuisance (which is denied), that fact would not prevent the acquisition of a prescriptive easement as against the private damage claims of the abutting property owners.

6. We do not agree with counsel for the defendants in their sixth proposition, for the reason stated by the learned circuit judge in his opinion.   The cases cited by defendants' counsel can be readily distinguished from the instant case; and if the position of counsel is correct, the doctrine of prescriptive right to an easement must be held not to prevail in Michigan.   The contrary doctrine has been too often asserted in this court to make it necessary to cite cases. The last one upon the subject is that of *Walton Cranberry Co.* v. *Seamon,* 171 Mich. 98 (137 N. W. 147).

7. As we understand it, all that the complainants ask in this case is a confirmation of the present right coextensive with its past user.   That the abutting property owners had at all times prior to the ripening of complainants' prescriptive title the right and power to test the validity of their claims, either by an injunction suit or by the commencement of an action to recover past damages either actual or nominal, is not questioned.   What we do hold is that by sleeping on their rights, if they had any, for nearly 45 years, they have lost all ground of complaint.

8. The conclusion of the court below, in which we fully concur, is that the abutting owners (if their claims were originally valid) had for 15 years the right to bring suit for their past damages, and at the same time could have stopped future damages by injunction.   But by sleeping upon these rights, while

the complainants have been every day using the streets in question, they have lost any right which they might have exercised. The rule contended for by appellants would destroy the existence of everything in the nature of a prescriptive easement. This court has in many cases sustained the validity of prescriptive easements. The following additional cases are more or less in point upon this subject: *Conklin* v. *Boyd,* 46 Mich. 56 (9 N. W. 134); *Ward* v. *Railroad Co.,* 62 Mich. 46 (28 N. W. 775, 785); *Gregory* v. *Bush,* 64 Mich. 37 (31 N. W. 90, 8 Am. St. Rep. 797); *Cornwell Manfg. Co.* v. *Swift,* 89 Mich. 503 (50 N. W. 1001); *Hoag* v. *Place,* 93 Mich. 450 (53 N. W. 617, 18 L. R. A. 39); *Leidlein* v. *Meyer,* 95 Mich. 586 (55 N. W. 367); *Williams* v. *Barber,* 104 Mich. 31 (62 N. W. 155); *Wesson* v. *Tolsma,* 117 Mich. 384 (75 N. W. 941); *Moon* v. *Mills,* 119 Mich. 298 (77 N. W. 926, 75 Am. St. Rep. 390); *Chase* v. *Middleton,* 123 Mich. 647 (82 N. W. 612); *Oneida Township* v. *Allen,* 137 Mich. 224 (100 N. W. 441); *Bean* v. *Bean,* 163 Mich. 379 (128 N. W. 413).

Under the authorities there is not the slightest doubt that a private nuisance may be legalized by prescription. See, also, 29 Cyc. p. 1206 *et seq.,* and the numerous cases there cited.

The decree of the circuit court is affirmed, with costs to the complainants.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.