### WESSON *v.* TOLSMA.

1. EASEMENTS—ALLEYS—PRESCRIPTIVE RIGHT.
   The use of an alley in the rear of certain lots by the owner of one of them, under a claim of right recognized by the owner of the other, will ripen into a right by prescription.

2. SAME—EVIDENCE—TERMS OF GRANT.
   A deed to a lot originally 100 feet deep, describing it as being 80 feet deep and bounded in the rear by an alley, is persuasive evidence that such grantee and his subsequent grantees held in recognition of the rights of the adjoining owners in such alley.

3. SAME—CHARACTER OF USER.
   The fact that sheds for the shelter of teams were built in a space claimed to be an alley is not conclusive evidence that the space was not used for all the purposes of an alley.

Appeal from Wayne; Frazer, J.   Submitted April 19, 1898.   Decided June 28, 1898.

Bill by Lacyra E. Wesson against Alexander S. Tolsma to enjoin the obstruction of an alley.   From a decree dismissing the bill, complainant appeals.   Reversed.

*Julian G. Dickinson,* for complainant.

*Brennan, Donnelly & Van De Mark* and *Selling & Hatch,* for defendant.

MONTGOMERY, J.   The bill in this case was filed to compel the removal of a building erected upon land claimed by complainant to be an alley abutting complainant's property, and to restrain defendant from obstructing such alley, or interfering with complainant's rights therein.   The *locus in quo* is a strip of land 40 by 20 feet in the rear of lot 60 of section 3, Governor and Judges' plan of Detroit. It appears that on the 27th of April, 1807, a plan of this section was made, showing an alley or *cul de sac* of the dimensions stated, in the rear of lot 60, and terminating at the side of lot 59, now owned by complainant.   This plat did not show the names of the streets, but was apparently accurate in other respects.   It was not, however, recorded until the 23d of December, 1848, when it was placed of record, pursuant to a resolution of the common council of the city, sitting as a land board, adopted December 12, 1848.   A map of Detroit was made by John Farmer in 1831, which shows this alley.   In 1835 another map was made by Mr. Farmer, which shows lot 60 with the rear 20 feet separated from the front portion by a dotted line. Numerous other maps were introduced,—one made by Eugene Robinson in 1879, one by the same publisher in 1885, and still another in 1889; also a map approved by the board of public works in 1886,—none of which show the alley in question.   Some testimony was also introduced to show that the dotted lines in the maps of 1831 and

1835 indicated only a proposed alley. As to the map of 1831, this testimony is not persuasive, in view of the fact that in the marginal annotation on that map appears the following: "The dotted lines exhibit the boundaries of certain lots and alleys according to the recorded plan."

One A. E. Hathon made a map of the city of Detroit, the date of which does not appear. The copy which is recorded bears date of 1856. After the Governor and Judges' plan was made, a conveyance was made of both lots 59 and 60 to William Brown, describing the lots as 100 feet in depth, which description included the land appearing as an alley on the map. Similar descriptions were contained in the chain of title until 1848, when the title was vested in Albert Crane. March 30, 1848, Albert Crane deeded an undivided one-half to Daniel C. Waterman, describing the property as the undivided one-half of lots 59 and 60 in section 3, corner of Woodbridge and Griswold streets. On May 29, 1849, Waterman conveyed to Crane lot 59 in section 3, Governor and Judges' plan of Detroit. Complainant derives title through mesne conveyances from Crane. On the 8th of August, 1848, Crane and Waterman conveyed to Charles J. Trombley "lot 60 in section 3, Governor and Judges' plan, according to A. E. Hathon's map of Detroit, being 80 feet deep and 40 feet wide, more or less, and bounded in front by Griswold street, on one side by lot 59, and on the other side by an alley, and in the rear by an alley." One Robert Dermont apparently held title to lot 59 at one time, and complainant's grantor, by mortgage foreclosure, acquired title. On the 1st of November, 1856, Dermont, as owner of lot 59, and Trombley, as owner of lot 60, entered into a party-wall agreement, which recited that "said Dermont is desirous * * * to extend the present wall from its present terminus to the alley in the rear," and contains a grant to Dermont of the right to construct a party wall along the line "to the alley in the rear of said lot." Trombley conveyed to Rahaley, and Rahaley to Seberon F. Tolsma. In each conveyance lot 60 is described as bounded in the

rear by an alley. On the 11th of October, 1894, Seberon F. Tolsma procured a quitclaim deed from Trombley, purporting to convey the *locus in quo*. The title of defendant was derived through this latter conveyance. Defendant thereupon erected the structure complained of. A large mass of oral testimony was taken bearing upon the question of the existence of an alley by prescription. The circuit judge dismissed the bill, and complainant appeals.

Defendant contends that, under the authority given to the governor and judges to make a plan, they could not divest title, and that the plan proposed by them was a tentative plan, as evidenced by their subsequent conveyance of the *locus in quo* as a part of lots 59 and 60, and that, in the absence of any express acceptance of the dedication by the public, the complainant has no standing. There would be force in this contention if there were no evidence of prescriptive right. It is also urged that an estoppel does not arise in favor of the complainant by a conveyance to defendant's grantors, describing the *locus in quo* as an alley. This is by no means so clear, as the conveyance to Trombley was made by Crane, he (Crane) reserving title in lot 59; but we do not care to rest our conclusion on the effect of this conveyance. We are all well satisfied that complainant has shown herself entitled, as against defendant and his grantors, to claim an easement in the *locus in quo*, acquired by user, under a claim of right, not only acquiesced in, but affirmatively recognized, by the grantors of defendant, for much more than the statutory period. The terms of the conveyance under which defendant's grantors held may not estop defendant, but they are most persuasive evidence that the tenants of lot No. 60 held in recognition of the right of complainant and her grantors. The fact that sheds were built in this alley to shelter teams is by no means conclusive evidence that the space was not used for all the purposes of an alley. The chief use of an alley, and particularly of a *cul de sac*, is that made by the abutting owners. *Paul* v. *City*

*of Detroit,* 32 Mich. 108; *Bagley* v. *People,* 43 Mich. 355 (38 Am. Rep. 192); *Horton* v. *Williams,* 99 Mich. 423.

We are satisfied that the occupants of complainant's premises have had the uninterrupted use of these premises ever since their building was constructed, and that this occupancy has been with the recognition and consent of the owners of lot 60.    This case is quite unlike *Dexter* v. *Tree,* 117 Ill. 532, cited by defendant's counsel.  In that case the question was whether a prescriptive right had been acquired in an alley when the instrument creating it described it as a private alley *for the sole and exclusive use* of the named parties.    It was held that the mere permissive use of the alley by a third person, under no claim of right, could not ripen into a right by prescription.    In this case the complainant's and defendant's grantors all understood that the use of this alley by complainant's grantors was not merely permissive, but under a claim of right; not only this, but a claim of right recognized by defendant's grantors.

The decree below will be reversed, and a decree entered granting the relief prayed, with costs of both courts to complainant.

The other Justices concurred.