R. E. LeBlanc *v.* Illinois Central Railroad Co. et al.

1. RAILROADS. *Title to roadbed. User. Lapse of time.*

   On a bill filed by a railroad company to cancel a tax title to its roadbed and right of way, where the company has been in the undisturbed possession of the same, asserting title, for forty years, and the original owners of the land have, in writing, solemnly recognized its ownership, it is unavailing as a defense to set up that the original condemnation was void, and, therefore, that the complainant has not shown a perfect title.

2. SAME. *Commutation tax. Payment. Exemption of property. Code 1880, §§ 607, 608.*

   Under §§ 607, 608, code 1880, a railroad company accepting the provisions of the statute and paying the fixed tax per mile on its line of railroad in this state, was exempt from other taxes on its roadbed and all other property *used in operating the road.*

3. SAME. *Property not used in operating road. Taxation. Code 1880, § 607; Laws 1884, p. 29.*

   But, under § 607, code 1880, and the act of 1884 (Laws, p. 29), all lands of a railroad company *not used in operating the road* were liable to assessment and sale for taxes by the local authorities, just as in case of other property subject to taxation.

4. SAME. *Land used partly for sale of gravel. Liability to taxation.*

Under said statutes, land (though adjacent to the railroad) upon which are gravel pits, connected with the main line by switches or spur tracks, and from which gravel is used, partly in operating the road, but largely for purposes of sale and gain, is not "used in operating the road" within the meaning of the statute, and such land is subject to assessment and sale for taxes, although the railroad company has paid the fixed privilege or commutation tax per mile on its line of railroad.

5. TAX TITLE. *Redemption. Constitution* 1890, §§ 79, 274.

Section 79, constitution 1890, giving two years to redeem land sold for taxes, was prospective. Under § 274, continuing in force until April 1, 1892, existing statutes, the right to redeem land sold in March, 1891, was limited to one year.

FROM the chancery court of Pike county.

HON. H. C. CONN, Chancellor.

Bill by the Chicago, St. Louis & New Orleans Railroad Company, lessor, and the Illinois Central Railroad Company, its lessee, against appellees to cancel a tax deed to land in Pike county, upon which is situated a certain gravel pit and the right of way of the railroad company for its main track and certain spur tracks. It is alleged that the property belonged to the first mentioned corporation, and was included in a lease of all its railroad property made to the Illinois Central Railroad Company in the year 1878. The land in controversy was assessed and sold by the local authorities of Pike county in 1891, for the state and county taxes of 1890. The railroad company undertook to develop the gravel pit, laying tracks thereon and taking out gravel, using part thereof for its own purposes in operating, maintaining and repairing its road, and selling a large part of it. This condition of things continued for several years, and existed at the time of the sale of the land for taxes. The railroad company owned other gravel lands, adjacent to the land in question, which were not used in 1890, and on which it paid taxes; but, claiming that the gravel land in controversy was being used by it in the operation of its railroad, and that

it was covered by the payment of a general tax, or privilege tax, as provided by the code of 1880, amended by the act of 1884, no taxes were paid on this land, and the same was sold. The bill asked for the cancellation of the tax title upon the ground that the property was used in operating the railroad, and could not, therefore, be assessed and sold by the local authorities after payment of the privilege or commutation tax by the railroad company.

It was also asked that complainants be allowed to redeem the land from the tax sale, if held to be valid. Tender of the taxes for the purpose of redemption was made to the chancery clerk October 28, 1892, complainants claiming that § 79, constitution 1890, allowing two years for redemption, applied. The money was refused by the clerk, and complainants tendered the same again, with the bill filed November 2, 1892.

Defendants answered, contesting complainant's title, and denying the material allegations of the bill. The payment of the requisite privilege or commutation tax was denied, and it was averred that the land constituting the gravel pit, at the time it was assessed and sold, was not used in the operation of the railroad. The answer was made a cross bill, and confirmation of the tax title was asked. Testimony was taken at length, and from a decree in favor of complainants, the defendant, LeBlanc, appeals. ·Certain condemnation proceedings under which complainant claimed were assailed as void on several grounds. But, as the court holds that the undisturbed possession of the road-bed and right of way for more than forty years conferred ownership, it is not deemed necessary to make any further reference to the objections to these proceedings. The opinion contains such further statement of the case as is necessary to an understanding of the questions decided.

*Cassedy & Cassedy* and *J. H. Price*, for appellant.

1. Title to the right of way is not shown, and, as to this, no right is established to assail the tax title.

2. If complainant's title is established, it is shown to be in the Chicago, St. Louis & New Orleans Railroad Company; and if the Illinois Central Railroad Company paid, as privilege tax, the proper amount within the proper time, this only relieved it from taxation under the general law, and did. not exempt the land of the Chicago, St. Louis & New Orleans Railroad Company.

3. The tax deed established *prima facie* the liability of the land for taxes, and that its subjection to sale was, in all respects, valid. The burden of disproving this was upon the complainants, and this burden has not been met.

4. The statutes providing for a privilege or commutation tax are unconstitutional, and the land in controversy was taxable under the general law, as any other land. *State* v. *Tonella,* 70 Miss., 701.

5. If the scheme for a commutation tax was constitutional, the amount paid did not exempt the gravel pit in question from taxation, because the same was not "used in operating the railroad." This language has reference to the land connected immediately with the operation of the road, and does not embrace lands from which material is procured to run it or keep it in repair. 7 Am. & Eng. R. R. Cas., 325; 24 *Ib.*, 494, 505; 31 *Ib.*, 482; 37 *Ib.*, 368; 39 *Ib.*, 556; 45 *Ib.*, 15; 22 Am. R., 187; 34 *Ib.*, 597; 42 *Ib.*, 589; 64 Miss., 393; 66 *Ib.*, 307; 67 *Ib.*, 82; 69 *Ib.*, 86. In this case gravel was taken from the land in large quantities and sold to other corporations and persons. Only a small proportion of the gravel was taken from this land for railroad purposes, and the larger part of this was used beyond the limits of this state. The statute exempting the property from taxation is to be strictly construed, and every condition must be complied with, before the exemption can be enjoyed.

5. The burden of showing that the property was used exclusively in the operation of the road within this state was upon the complainants, and the evidence does not meet this burden,

but, upon the contrary, shows that the gravel was procured to be sold to other parties.

6. Section 79, const. 1890, is prospective in operation, and is not self-executing. By § 274 of the constitution, the laws in effect at the time of the tax sale were specially continued in force as to all rights accrued or accruing under them. 64 Miss., 468; 11 So. Rep., 793; 13 *Ib.*, 866; 14 *Ib.*, 453; *Judah* v. *Brothers*, 71 Miss., 414.

*R. H. Thompson*, for appellee.

1. The railroad company, having been in the possession and use of the right of way and roadbed for more than thirty years, had a right to maintain the suit to cancel the tax title. This would be true, even if the possession were permissive. It was not permissive, though, but was in every respect adverse.

2. The condemnation proceedings, under which the other property was obtained, were regular, and the railroad company has been in the continuous possession of the property thereunder since 1886. The question is not one of perfect or defective title, but is one of possession and use.

3. The scheme for the taxation of railroads, different from the taxation of other property, with the proviso that lands owned by railroads, not used in operating the road, should be taxable as other property for all purposes, is valid and constitutional. If the road had not elected to pay the fixed tax per mile, it would have been taxable under §§ 597, 606, code 1880, by which the auditor, treasurer and secretary of state were made assessors of railroad property. Under the code of 1880, no condition of the property rendered it liable to assessment and sale for taxation as ordinary property. The construction of the act of 1884 (Laws, p. 29), for which we now contend, seems never to have been passed upon by the supreme court. It was certainly not raised or suggested in *Railroad Co.* v. *Bradley*, 66 Miss., 518; *Lewis* v. *Railroad Co.*, 67 *Ib.*, 82; *Railroad Co.* v. *Lewis*, 68 *Ib.*, 29.

It is averred in the bill, and not denied, that the complainant's interest in the land in controversy was not taxable, save as railroad property is, and was by law, taxable for the year 1890.

4. The evidence shows that for the year 1890, the railroad company paid the full amount required per mile on its line of road, the due proportion thereof being paid to Pike county. In view of the evidence, it is submitted that the land in controversy was necessary to the use and operation of the railroad; that it was so used, and, therefore, was not subject to sale for taxes. The evidence conclusively settles this question of fact in favor of the complainants, not only as to the right of way, but as to the gravel pit. The language of the statute exempting land used in operating the road, is to receive a reasonable construction. It would be unreasonable to hold that only a strip of forty or fifty feet on each side of the track is to be exempt. That much of the right of way is essential to the safety of trains. The gravel pit in question was adjacent to the road, and has been in constant use, and over it a number of tracks extend. Why should they not be exempted as being used in the operation of the road? On this point, we refer to the language of the court in *McCullough* v. *Stone*, 64 Miss., p. 378.

WOODS, J., delivered the opinion of the court.

It is too late now to call in question the title of the appellee to its roadbed and right of way. For forty years the railroad has been in undisturbed possession of the right of way, and asserting title in every way possible, almost. Henry and John Carter, the original owners of the land which the right of way traverses, have, in writing, solemnly recognized the right of way as belonging to appellee's lessor.

That the roadbed and right of way was not assessable or salable by the local authorities of Pike county is susceptible of ready demonstration. Under the scheme of the code of 1880,

§§ 597 to 606, inclusive, for the taxation of all railroad property, provision was made for valuing, assessing, and taxing railroads and all their property in a manner peculiar and totally distinct from that prescribed for all other property in the state, and under this scheme the local authorities had nothing to do with the assessment of taxes upon railroad property. By §§ 607, 608 of the same code, the railroad companies of the state were relieved from compliance with the said scheme for taxing railroad property, by payment of certain fixed sums as commutation taxes; but the proviso to § 607 declared that lands owned by railroad companies, and not used in operating the railroads, should be taxable as other property, and for all purposes. The appellee accepted this act of the legislature, and so signified its acceptance in formal writing to the proper state authority, and from the year of so accepting, the appellee paid, annually, into the state treasury, the full amount of its commutation tax required of it, up to and including the year 1890, that being the year in which the railroad is supposed to have been in default in the payment of its commutation and other taxes. Clearly, by the plain terms of §§ 607, 608, the local authorities had no power to assess and collect taxes on the property of the appellee used in operating its railroad, and so the appellants acquired no title to appellee's roadbed and right of way in the southeast quarter of the southwest quarter of section 11, township 1, range 7, east, in Pike county.

As to the Carter gravel pit (as we shall call it for convenience) and the adjoining gravel pit of the appellee, it is equally clear to us that these, if not used by appellee in operating its railroad, were taxable by the local authorities. This view is supported by three considerations:   1. The proviso to § 607 declares that lands owned by railroad companies, and not used in operating its railroad, shall be taxable as other property, and for all purposes. 2. By an act approved March 12, 1884, (Laws, p. 29), this section of the code of 1880 was amended in these words: "Lands owned by railroad companies, and not

used in operating the railroads, shall be taxable as all other property, and for all purposes, any exemption in their charters to the contrary notwithstanding as to such lands; and said lands shall be listed by assessors, and taxes shall be collected by sheriffs and paid into the state and county treasuries. 3. And, conclusively, when, under §§ 607 and 608, the appellee accepted the provision for a commutation tax on all its property employed in operating its railroad, the former sections, from 597 to 606, inclusive, became ineffective, and the appellee, by the express terms of § 607, was exempted from the foregoing sections of the code scheme for railroad taxation embraced in the sections from 597 to 606.    The auditor, treasurer and secretary of state, who were constituted a state board of assessors for railroad taxation under the scheme of the code of 1880, ceased to exercise the functions of assessors, and the railroad company was released from the duty of filing with the auditor of public accounts a full schedule of all its property, real, personal and mixed, wherever situated, with its value.    It thus became the duty of local assessors to list all lands of this appellee not used in operating its railroad, and of the local collector to collect all taxes due on such lands by the ordinary processes of law, and pay the same into the state and county treasuries according to their respective rights.

The only question remaining is one of fact.    Was the Carter gravel pit "used" in 1890 in operating the railroad?    The Carter gravel pit was used by the appellee—partly in operating its railroad and largely for purposes of sale and gain—as very clearly appears from the evidence before us, and so these gravel pits were properly sold as delinquent for taxes by the local authorities of Pike county, and respondents acquired a valid tax title to them at the collector's tax sale made March 2, 1891.

The offer to redeem was too late.    The period of redemption was one year.

*Reversed in part and affirmed in part, and decree here in accordance with this opinion.*