THE INDIANAPOLIS WATER COMPANY *v.* KINGAN & COMPANY, LIMITED.

[No. 18,706. Filed November 27, 1900.]

QUIETING TITLE.—*Eminent Domain.—Easements.—User.—Canals.— Riparian Owners.*—In the construction of a canal from Broad Ripple to Indianapolis, under the acts of 1835 and 1836 (Acts 1835, p. 25, Acts 1836, pp. 14, 15), the board of internal improvements built a dam across White river and constructed a levee along the bank, extending up the river about a mile. The dam set back the water for a distance of more than four miles, and widened the river on each side more than thirty feet, on an average, and boats loaded with grain or wood were occasionally taken from the canal through the locks onto the river above the dam, and thence poled to various points. Plaintiff, a riparian owner, brought suit against defendant, who had succeeded to the rights of the canal, to quiet title; defendant produced proof of a continuous flowage since 1838. *Held*, that user by flowage evidenced no broader claim than a right of flowage, and that such a right is a mere easement.

From the Marion Circuit Court. *Affirmed.*

*W. A. Ketcham, Albert Baker* and *Edward Daniels,* for appellant.

*W. H. H. Miller, J. B. Elam* and *J. W. Fesler,* for appellee.

BAKER, J.—Complaint by appellee to quiet title. Answer, general denial. Trial by court. Special finding of facts and conclusions of law. Judgment quieting title in appellee. Motion for a new trial overruled. Errors are assigned on the conclusions of law and the refusal of a new trial.

The assignments present but one question, and that arises on these facts: White river runs through Marion county. It is non-navigable, and the title of adjoining proprietors extends to the thread of the stream. *Ross* v. *Faust,* 54 Ind. 471, 23 Am. Rep. 655. Between 1829 and 1836 the legislature passed various statutes to provide for the con-

struction of public canals which should be free highways.
A "board of internal improvements" was created to carry
on the work in behalf of the State.    In 1838 the board con-
structed a canal from Broad Ripple to Indianapolis within
Marion county.    The canal bed was dug through dry land.
To supply it with water the board built a dam eight feet
high across White River at Broad Ripple.    At this point
the right bank of the river was low, and so a levee was con-
structed extending from the abutment of the dam up the
river about a mile and varying from forty to two hundred
feet from low-water mark.    The dam set back the water for
a distance of more than four miles and widened the river on
each side more than thirty feet on an average.    The board
constructed locks between the canal bed and the river above
the dam.    After the canal was in operation, boats for carry-
ing freight and passengers were run upon the canal, by
horse-power on the towpath, between Broad Ripple and
Indianapolis.    Occasionally boats, loaded with grain or
wood, were taken from the canal through the locks onto the
river above the dam and thence were poled to various points
and were returned by the same route to Indianapolis.
Above the dam no horse-power was used.    Before the canal
was built flat-boats, pirogues and canoes were operated for
the carriage of grain and wood on the river from above the
dam's location to Indianapolis.    This canal was never ex-
tended above Broad Ripple.    If it had been, the four miles
of backwater would probably have been used as a link in
the water highway between Indianapolis and the next canal
above the dam.    In 1850 the State, having abandoned its
scheme of internal improvements, sold this canal, with all
the appurtenances and privileges pertaining to it, to one
Conwell.    The deed is set out in *Indiana Central Canal Co.
v. State,* 53 Ind. 575.    By mesne conveyances appellant, a
company engaged in furnishing the city and citizens of In-
dianapolis with water, has succeeded to the rights of Con-
well.    The dam, levee and canal have been maintained and

continuously possessed by appellant and its grantors from the time of the original construction to the present date. Appellee claims to own certain lands on the river, above the dam, within the limits of the backwater, and extending to the thread of the stream. Appellee produced a chain of title, in which appellant finds no flaw, and which entitles appellee to all the rights of a riparian owner, unless the construction of the dam and the facts connected therewith as above stated deprive appellee of those rights.

The parts of the statutes, conferring power on the board to acquire land and take materials and secure privileges necessary to construct the canal and appurtenances, are as follows: By section four of the act of 1835 (Acts 1835 p. 25) it is provided that "in all cases where applications for damages growing out of the construction of the Wabash and Erie Canal, or the works connected therewith, have been made or shall be made, for any lands, timber or stone, or other materials which may have been taken for the construction of said canal under the provisions of the laws of this State; or for any lands, timber, stone, or other materials, which may be taken under authority of the laws in force, for the location or completion of said canal, or any of the structures thereto appertaining, the claims shall be filed with the board." The duties of the board and of the appraisers and the proceedings in making the appraisement are prescribed, and the appraisers are required "to make an equitable assessment of the damage (if any) which the respective claimants may have sustained, over and above the benefits conferred by the construction". And it is made the duty of the board to pay the awards to the individuals, "which shall vest the fee-simple of the premises so appropriated in this State." By section sixteen of the act of 1836 (Acts 1836 p. 14) it was provided that it should be lawful for the board, and each of its members, by themselves or by superintendent, agent or engineer, to "enter upon and take possession of and use all and singular any lands,

streams and materials of any and every description neces-
sary for the prosecution and completion of the improve-
ments contemplated by this act; and to make all such canals,
feeders, dams, locks, railroads, turnpike roads, and other
works as they may think necessary for making said improve-
ments, avoiding in all cases unnecessary damage or injury to
the proprietors." By section seventeen it is provided that
if persons feel aggrieved "by the construction of any of the
works contemplated by this act, or by the use of materials for
the same," they shall make out a written statement of the
cause of complaint and deliver it to the member of the
board having the superintendence of that part of the public
works which is supposed to occasion such injury, which shall
be laid before the board at its next semiannual meeting, and
which the board shall refer to three appraisers to be named
by the board, the decision of the appraisers to be final unless
an appeal be taken to the circuit court within thirty days
after the decision. And "the appraisers, the court or jury,
shall take into consideration the benefits resulting to such
complainant from the construction of the works which occa-
sion the supposed injury." Sections eighteen and nineteen
read: "Sec. 18. The said board of internal improvements
shall, by any one or more of its members, proceed in due
time along the lines of the said several works herein con-
templated, and take from the several individuals through
whose lands any of said contemplated works may pass, or
which may be contiguous thereto, releases to the State of the
necessary land, timber, stone, sand, or other material, for the
purposes of constructing any or all of said works, or for
repairing the same, and for building-ground for the con-
struction of mills or other hydraulic machinery to be pro-
pelled by the water power of any such canal, and also to
enter and purchase, on behalf of the State, any lands be-
longing to the general government or to individuals con-
tiguous to such work for the same purpose, and file the same
in the office of the Secretary of State; which releases shall

operate so as to vest in said State a full and complete right to enter upon, use, and take the same at any and all times thereafter." "Sec. 19. Said board, or any member as aforesaid, in taking releases as aforesaid, is hereby authorized, in consideration of any privilege granted by individuals to the State of the right of way or other privilege, to contract with such individual, on behalf of the State, to erect across said canal any bridge or bridges for the benefit of such individual and the public."

In *Water Works Co.* v. *Burkhart,* 41 Ind. 364, the question whether the State, by appropriation proceedings under the power of eminent domain, acquired an easement or a fee simple absolute in the bed of this canal now owned by appellant, was under consideration. The land in dispute was owned by one West at the time of the appropriation on behalf of the State. The court said, page 366: "The board of internal improvements, for the purpose of constructing the central canal, and to procure a right of way therefor, appropriated a strip of land through said real estate, and constructed thereon the bed of said canal, its banks, margins, and towpaths. West's damages, occasioned by such appropriation, were assessed, as provided by law, and paid to him as follows: September 30, 1837, $700, and February 25, 1839, $250. The board of internal improvements entered upon the strip of land so appropriated, and constructed upon it the bed, banks, margins, and towpaths of the canal." The questions to be decided were stated thus, page 369: "We have really only to determine what power the legislature possessed to appropriate the property, and what interest or estate was appropriated." The conclusion of the court on the first branch of the question is well expressed in the words of Denio, J., in *People* v. *Smith,* 21 N. Y. 595, quoted with approval on page 371: "The necessity for appropriating private property for the use of the public or of the government is not a judicial question. The power resides in the legislature. It may be exercised by

means of a statute which shall at once designate the property to be appropriated and the purpose of the appropriation; or it may be delegated to public officers, or, as it has been repeatedly held, to private corporations established to carry on enterprises in which the public are interested. There is no restraint upon the power, except that requiring compensation to be made." In the present case it is observable that the legislature did not designate the property to be appropriated, but delegated the selection to public officers. The statutes were inoperative as to any particular tract until designated by the board. Over the board's determination of the necessity of any appropriation, the courts have no control. On the second branch of the question, namely, what estate the board acquired for the State by appropriating property under their delegated power of eminent domain, the court on pages 376 to 386 decided in substance that section four of the act of 1835 was not repealed in terms, nor impliedly, by the act of 1836; that the acts were to be construed *in pari materia;* that, since section seventeen of the act of 1836 was silent as to the estate acquired by condemnation proceedings, the court would look to section four of the act of 1835; that, since section four provided that payment of the award of damages should "vest the fee simple of the premises so appropriated in the State", evidence that particular land was taken by the board under the power of eminent domain would establish title in fee simple absolute in the State and its grantees.

This decision has been followed in *Nelson* v. *Fleming,* 56 Ind. 310; *Cromie* v. *Trustees, etc.,* 71 Ind. 208; *City of Logansport* v. *Shirk,* 88 Ind. 563; *Brookville, etc., Co.* v. *Butler,* 91 Ind. 134; *Shirk* v. *Board, etc.,* 106 Ind. 573; *Frank* v. *Evansville, etc., R. Co.,* 111 Ind. 132; *Blair* v. *Kiger,* 111 Ind. 193; *Quick* v. *Taylor,* 113 Ind. 540; *Collett* v. *Board, etc.,* 119 Ind. 27, 4 L. R. A. 321; *Peoria, etc., R. Co.* v. *Attica, etc., R. Co.,* 154 Ind. 218. In all these

cases except the last two, the court has expressed its reluctance in following the Burkhart decision, and has declared its unwillingness to extend the doctrine by construction beyond cases in which the State's grantee claims under the board's exercise of the power of eminent domain. But the court has never failed to abide by the Burkhart decision as a rule of property to the full extent of the holding that evidence of the board's exercise of the power of eminent domain established title in fee simple absolute.

Take, for example, the cases of *Brookville, etc., Co.* v. *Butler,* 91 Ind. 134, and *Blair* v. *Kiger,* 111 Ind. 193. In the Brookville case the canal was constructed through a piece of low ground in such a manner that there was a proper bank on one side of the excavated channel and not on the other. On this latter side the water spread over the remainder of the low ground and formed a pond. The suit, begun more than twenty years after the canal was dug, involved the title in fee to the ground on which the pond was formed. It was held, in substance, that the canal proprietor, claiming by virtue of an appropriation made by the State under the power of eminent domain, need not affirmatively show, after such a lapse of time, that compensation had actually been paid; that the flowage of water beyond the excavated channel did not evidence an appropriation, under the power of eminent domain, of the fee in the flooded land; that the right of flowage is merely an easement; that evidence of the fact of flowage for twenty years establishes of itself nothing more than a prescriptive right to such an easement. In the Blair case the canal crossed a creek at right angles. The canal was not carried over the creek in a viaduct, but crossed in it, so to speak. A dam was built and this formed one of the banks of the canal. The dam was of such a height as to raise the water in the creek to the level desired in the canal on each side. Guardgates were put in the canal at each end of the dam, so as to regulate the flow from the creek into the canal in each

direction.  The water of the creek was thus used to keep the water in the canal at the required level.  While the dam constituted one bank of the canal, there was no bank opposite to it; and there could be none, else the construction of the canal at that point would be defeated.  Before they built the dam, the board entered upon and made a survey of the land required for carrying the canal across the creek in this manner, and cut down and burned the timber on the surveyed tract.  Guard-banks were constructed up each side of the creek for the purpose of forming a basin.  It was held that "the basin was constructed as a part of the canal, and the land was appropriated for that purpose"; and that, under the Burkhart case, the appropriation vested the fee in the canal proprietor.

While the Burkhart case holds that section four of the act of 1835 was not repealed by the act of 1836, it does not decide that the act of 1835 limits, modifies, or controls sections eighteen and nineteen of the act of 1836; it does not decide that the board could proceed only by exercising the power of eminent domain; it does not decide that, if the board proceeded by contract, they could not purchase a less estate than a fee simple where they desired gravel or timber, or that, if they needed the right of flowage, they could not act by paying for less than the value of the fee, including the value of the riparian rights.  Section eighteen required the board, before commencing work, to proceed along the line and procure "releases" for necessary lands and materials, "which releases shall operate so as to vest in said State a full and complete right to enter upon, use, and take the same at any and all times thereafter".  Manifestly, it was intended that condemnation should not be resorted to except in case of failure to reach satisfactory agreements with owners..  Section nineteen authorized the board, "in consideration of any privilege granted by individuals to the State of the right of way or other privilege, to contract with such individual, on behalf of the State, to erect across said

canal any bridge or bridges for the benefit of such individual and the public". The expressions, to enter upon and use land, to take materials, to secure grants of right of way, to secure other privileges, all indicate an easement 'and not a fee simple absolute. So it is clear that the board, if they chose to contract for an easement, had the power to do so.

In the present case, as already stated, appellee produced evidence, sufficient on its face, to establish its rights as a riparian proprietor. Against this, appellant produced nothing but proof of a continuous flowage since 1838. Outside of the building of the dam and levee, there was neither a taking nor a possession of the banks of the river above the dam except by the raising of the water in the river—a necessary result of building the dam. After possession for twenty years, the conclusive presumption arises of a grant or right ample enough to protect the possession. "A prescriptive right can never be broader than the claim evidenced by user." *Brookville, etc., Co.* v. *Butler,* 91 Ind. 134; *Quick* v. *Taylor,* 113 Ind. 540; *Peoria, etc., R. Co.* v. *Attica, etc., R. Co.,* 154 Ind. 218. The user by flowage evidenced no broader claim than a right of flowage; and such a right is a mere easement. *Edgerton* v. *Huff,* 26 Ind. 35; *State* v. *Pottmeyer,* 33 Ind. 402; *Julien* v. *Woodsmall,* 82 Ind. 568; *Brookville, etc., Co.* v. *Butler,* 91 Ind. 134; *Board* v. *Indianapolis Natural Gas Co.,* 134 Ind. 209.

Judgment affirmed.