MICHIGAN CENTRAL RAILROAD CO. v. GARFIELD PETRO-
LEUM CORPORATION.

SAME v. CARPENTER.

RAILROADS—ADVERSE POSSESSION—RIGHT OF WAY—MINERAL RIGHTS.
A railroad only acquires an easement when its user is wholly
limited during the period of adverse possession for the pre-
scriptive period to the right of way; hence it acquires no title
or interest in and to the coal, oil, gas, or other minerals beneath
the surface of such right of way (Const. 1908, art. 13, § 1; 3
Comp. Laws 1929, § 11135).

BUSHNELL, C. J., and CHANDLER and NORTH, JJ., dissenting.

Appeal from Gladwin; Reid (Neil E.), J., presid-
ing. Submitted October 6, 1939. (Docket Nos. 68,
69, Calendar Nos. 40,685, 40,686.) Decided March 15,
1940.

Separate bills by Michigan Central Railroad Com-
pany against Garfield Petroleum Corporation and
another and Alice Carpenter, Harold H. Thick,
Sadie M. Thick, Michi-Oil, Inc., and another to quiet
title to lands. Cross bill by defendant Garfield
Petroleum Corporation against plaintiff for an in-
junction. Cross bill by defendants Carpenter and
Thick against plaintiff and Weber Oil Company, a
Michigan corporation, to determine state of title.
Cross bill by Michi-Oil, Inc., against Weber Oil Com-
pany to determine right to oil royalty. Decree that
plaintiff has title to surface but not to coal, oil, gas,
and minerals. Plaintiff appeals. Affirmed.

*Clark & Henry* (*John J. Danhof* and *Harold H.
McLean*, of counsel), for plaintiff.

*Francis H. Dodds* and *Hubert J. Gaffney,* for defendants Carpenter, Thick, Michigan Producers & Refiners, Inc., and Michi-Oil, Inc.

McALLISTER, J. The above cases were consolidated on appeal.

In 1885, the Saginaw Bay & Northwestern Railroad Company entered upon the lands in controversy, cleared the timber from a right of way, and constructed tracks thereupon. The clearing was 100 feet wide, fenced in on both sides. In 1901, the original entrant deeded the property to the Jackson, Lansing, & Saginaw Railroad Company, and this company in turn conveyed it to the Michigan Central Railroad Company in 1916. During all of this time, the tracks have been maintained and trains operated over the right of way. No question is raised by defendants but that the property has been used and occupied by the railroads for the prescriptive period. The defendants are owners of lands adjoining the strip claimed by plaintiff. Two parcels are in controversy—one a strip 965 feet in length, and the other 1,434.6 feet in length. Each is 100 feet wide. Plaintiff filed a bill to quiet title, and asked that the court decree it to be the owner in fee simple of such lands because of adverse possession. The trial court denied the prayer of plaintiff, but decreed that it was "the owner of, with the right to use the surface of aforesaid described strip of land;" and further adjudged that plaintiff had no right, title, or interest in and to the coal, oil, gas, or other minerals beneath such surface. From such decree, plaintiff appeals.

The only question to be determined in this case is whether a railroad company secures, by adverse possession, an absolute fee in land, over which it lays tracks and operates trains, continuing such user for

the prescriptive period. The question is before this court for the first time. Plaintiff claims that it secures an absolute fee to such land by adverse possession; defendants claim that they retain absolute title in the mineral rights, and that plaintiff has only a right of user, similar to an easement.

It is not open to doubt that railroads may acquire titles and interests in lands by adverse possession, and may take an absolute fee by grant. *Quinn* v. *Railway Co.*, 256 Mich. 143. But innumerable cases are concerned with the question of what the extent of such interest is, when acquired by adverse possession. In many of the adjudications, the question of what interest a railroad secures by condemnation is discussed; and in determining the extent of interest acquired by user, analogies are drawn to the interests acquired by right of eminent domain. But, because many of such cases depend largely upon provisions of the different statutes and State Constitutions, governing various aspects of the question, they are not helpful in arriving at a determination in the case before us, since our statutory and constitutional provisions are dissimilar, in this respect, to those of other States.

At the outset, it is pertinent to refer to one of the arguments advanced by plaintiff in which it is said:

"Despite the plaintiff's exclusive possession of the land the trial court held that plaintiff's rights were limited to the surface because the surface was all that the plaintiff actually used or needed in its business. This is obviously wrong, unless railroad corporations are to be treated differently from all others."

An observation with regard to this contention may be useful in the elucidation of the question. We are of the opinion that railroad corporations are, in a marked degree, to be treated differently

from other persons and corporations in regard to the acquisition of land by adverse possession. Property of individuals taken by railroad corporations for the purpose of constructing their road is, in legal contemplation, taken not for private use, but for a public use, and the tenure of railroads in lands condemned for such a purpose is in the nature of a trust for public use, subject to the supervision of the government. In one of the earliest cases in this State, *Swan* v. *Williams*, 2 Mich. 427, 439, the court, in upholding proceedings under the right of eminent domain, discussed the delegation of the right of condemnation to a railroad corporation, and the theory upon which such power could be delegated. The court said:

"The power to delegate the exercise of the eminent domain, to effectuate such purpose, from the universality of its exercise, is no longer an open question. In every instance of turnpike, plank road, bridge, ferry, and canal companies, it has been employed, as well as those of railroads. All this class of incorporations have been enacted upon the hypothesis that the lands taken for these purposes were taken for public use, and not for private endowment, and it legitimately follows that the tenure of the corporation is in the nature of a trust for the public use, subject to the supervision of the government, while its franchises are but the consideration paid for the faithful execution of this trust. It is an equally legitimate consequence, that the object intended must be effectuated, or the grant can be revoked, and the franchise reclaimed. If it be conceded that the prerogative or power of constructing and employing these roads resides in the government, it is difficult to see how the delegation of such prerogative can divest the government of supervision over its exercise. For the purpose of carrying out and effectuating the general purpose, the

company may be regarded, as we have shown, as a trustee or agent—entitled to certain rights and immunities, upon a faithful observance upon its part, of the objects and terms of its creation. The right to purchase and hold lands for the purposes of the road, being a right delegated in virtue of the eminent domain of the government, and derogatory to those of the citizen whose property is condemned, must be construed as conferring no right to hold the property in derogation of the purposes for which it was taken."

The United States supreme court has observed: "Railroads are a peculiar species of property, and railroad corporations are in some respects peculiar corporations." (*Sinking Fund Cases*) *Union Pacific R. Co.* v. *United States; Central Pacific R. Co.* v. *Gallatin,* 99 U. S. 700, 722.

The principles enumerated in the various cases, and our statutory and constitutional provisions, may be best considered by having in mind such distinct difference between railroad corporations and other corporations and persons.

If, by right of eminent domain, plaintiff in this case could acquire title to mineral rights, it would be clear that such rights were based upon a showing of necessity, as otherwise there would be no authority for such proceedings under the Constitution. If such rights could not be acquired by condemnation because of lack of necessity, it would disprove a title claimed to be acquired by adverse possession.

"There can be no doubt that title to surplus real estate may be acquired in a proper case by limitation. The company may upon the same principle acquire an easement by adverse possession. We suppose that where the possession consists in the use of the lands as a right of way an easement and not the fee would be acquired. The general rule is

that where an easement is claimed by user the easement can be no broader than the use. The extent of the easement in such case is to be determined by the actual use and possession. * * *

"Where there is a right to take land for a designated purpose and the land is used for that purpose, the possession will be referred to that right. From this doctrine, which we regard as well founded, it follows that a railroad company, in taking possession of land, will ordinarily take an easement and not the fee, for the reason that the right to take an easement is the right to which possession must be referred. The fee is not acquired by possession unless the right to which the possession is referable authorizes the acquisition of a fee. A corporation cannot, by exceeding its power, enlarge its rights." 1 Elliott on Railroads (3d Ed.), §§ 462, 463.

As provided in our Constitution, private property shall not be taken by the public, nor by any corporation for public use, without the necessity therefor being first determined (Const. 1908, art. 13, § 1); and the necessity must be a real necessity. *City of Detroit* v. *Daly,* 68 Mich. 503. The statute granting railroads the power to condemn provides that after the necessary proceedings and payment to the owner, "the company shall be entitled to enter upon and take possession of and use the said land, franchise, and other property for the purpose of its incorporation; and all persons who have been made parties to the proceedings, either by publication or otherwise, shall be divested and barred of all right, estate, and interest in such real estate, franchise, or other property, until such right or title shall be again legally vested in such owner." 2 Comp. Laws 1929, § 11135 (Stat. Ann. § 22.226).

In *Re Petition of Detroit, G. H. & M. R. Co.,* 248 Mich. 28, the court said that "in general, it has been

held that such land as is essential to the construction, maintenance, and operation of a railroad may be secured by it through condemnation proceedings,'' and cited with approval the following statement of the principle of law applicable in such proceedings from 10 R. C. L. p. 196:

''A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication, and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained.''

In 20 C. J. p. 1222, it is said:

''Since the statutes conferring the power of eminent domain are in derogation of the common right and therefore must be strictly construed, the provisions thereof with respect to the extent of the interest or right which may be taken are also to be strictly construed. Thus where the statute has prescribed the interest to be taken, no other interest can be taken than that specified. Where the estate or interest to be taken is not definitely set forth, only such an estate or interest may be taken as is necessary to answer the purpose in view.''

Where the interest to be taken is not expressly stated, the condemnor is presumed to take no greater interest than an easement, where an easement is sufficient to satisfy the purposes of the taking. *Harris* v. *Elliott,* 10 Pet. (35 U. S.) 25; *Newton* v. *Railway Co.,* 53 C. C. A. 599 (115 Fed. 781).

If, in condemnation proceedings, a railroad is expressly limited ''to enter upon and take possession of and use the said land, franchise, and other property for the purpose of its incorporation,'' it would appear that the extent of its right and possession

would be restricted to railroad purposes. Plaintiff argues that the purpose of incorporation of its predecessor in title was expressed in the statute governing railroads, Act No. 198, Pub. Acts 1873 (see 2 Comp. Laws 1929, § 11121 [Stat. Ann. § 22.212]); and that by the provisions thereof, a railroad corporation had the power "to purchase, and by voluntary grants and donations, receive, take and * * * enter upon and take possession of, hold and use all such lands and real estate, franchises and other property as may be necessary for the construction, maintenance and accommodation of its railroad and railroad bridges or railroad tunnels, stations, depots and other accommodations." It is urged that an interpretation restricting a railroad from acquiring absolute fee by adverse possession nullifies the words, "enter upon, take possession of, hold and use." However, the statute governing the condemnation of land for highway purposes provides that "the *title* to such lands shall be deemed vested in the county." 1 Comp. Laws 1929, § 3991 (Stat. Ann. § 9.116). In *Re State Highway Commissioner,* 256 Mich. 165, it was said: "When land is taken by eminent domain, it becomes *absolutely* the property of the State or other public authority that has condemned it." But this statement is followed by the sentence: "The former owner retains no such right in it so as to prevent it from being used for general public purposes;" and in *Township of Custer* v. *Dawson,* 178 Mich. 367, it was said that when land was condemned for a public highway, "if valuable minerals underlie the highway, they belong, not to the public, but to the owner of the adjoining lands." The use of such language as "title shall be deemed vested," "becomes absolutely the property," "take possession, hold and use all such lands," refers to the extent of the use author-

ized, and does not necessarily mean that absolute fee title is to be acquired.

It is contended that *Quinn* v. *Railway Co., supra,* sustains plaintiff's contention that a railroad company may acquire title to a fee simple absolute by adverse possession in lands which it occupies for the purpose of a right of way. That case decided only that such a title could be acquired by a grant. In a general statement, it is true that it was said that title may be acquired by voluntary grant, purchase, condemnation, or prescription, but the case cited to show that title could be acquired by prescription referred only to easements by prescription. In *Munroe* v. *Railway Co.,* 226 Mich. 158, cited in support of plaintiff's contention, the case involved "title to a 30-foot right of way." In the above case, the court said: "Can a railroad company acquire title to land by adverse possession? This court has held that it can. *Felton* v. *Wedthoff,* 185 Mich. 72."

But the court was referring only to acquisition of title to a right of way, as that was the only question before it for consideration. In *Felton* v. *Wedthoff, supra,* the court only decided that an easement could be acquired by prescription. In its opinion, the court said (p. 83):

"The cases cited by defendants' counsel can be readily distinguished from the instant case; and if the position of counsel is correct, the doctrine of prescriptive right to an easement must be held not to prevail in Michigan. The contrary doctrine has been too often asserted in this court to make it necessary to cite cases. The last one upon the subject is that of *Walton Cranberry Co.* v. *Seamon,* 171 Mich. 98."

In *Walton Cranberry Co.* v. *Seamon,* above referred to, the decision of the court was limited to a

holding that easements might be acquired by prescription. In none of the cases before the court has it ever been held that a railroad acquires a fee simple absolute, by prescription, to lands which it occupied for a right of way by adverse possession.

In considering the question here involved, the decisions of other jurisdictions are illuminating. In *Pennsylvania R. Co.* v. *Breckenridge,* 60 N. J. Law, 583 (38 Atl. 740), plaintiff brought eviction against an oil company and a landowner for having placed a pipe line under the land occupied by it, plaintiff claiming that the railway had title to the land by adverse possession. The court, in affirming judgment for the defendants, held that plaintiff's possession was consistent with the right of defendants to lay pipes below the surface of the right of way, since all these rights may be exercised without interference. The court said (p. 586):

"Things that can coexist in harmony are not mutually adverse. A title depending solely on acts of adverse possession, and deriving no color from any deed, does not extend beyond the *pedis possessio.* The right is commensurate with the use. The enjoyment is limited to that which has been actually enjoyed. Especially is this the rule in the case of a corporation invested with the prerogative of eminent domain, for the purpose of enabling it to construct and operate a public highway. The public grant will be interpreted strictly, and construed to give merely the power to take an easement adequate to the accomplishment of the corporate design."

In *New Jersey Zinc & Iron Co.* v. *Morris Canal & Banking Co.,* 44 N. J. Eq. 398, 403, 404 (15 Atl. 227, 1 L. R. A. 133), the court of chancery of New Jersey, in passing upon the extent of interest acquired by

a corporation invested by the State with the power of eminent domain, said:

"The difference in the legal effect, which must be attributed to the conveyance of an estate in fee, whether absolute or qualified, and the right which the defendants acquired by simply taking possession of land for a right of way or condemning it for a like purpose, is wide and vital. Under a conveyance, even if it be of only a qualified fee, the defendants have, while their estate continues, by the plain terms of their grant, an absolute right to the exclusive possession of the land conveyed. * * * But the defendants' right in lands, acquired by any other means than by grant, stands on an entirely different foundation. Where the State invests a corporation with the sovereign prerogative of eminent domain, for the purpose of enabling them to construct and operate a public highway, and they take land by force of their charter, or by any other means than by grant, for the purposes of such highway, it is manifest that the plain purpose of the grant to them is not to give them capacity, or invest them with power to take a fee, but merely to give them power to acquire such an easement in the land as will enable them fully to accomplish the purposes for which they were created. The plain design of the grant, in such a case, is to enable them to acquire what they require for the construction and successful operation of their highway, but nothing more. The title to the land taken remains, in such cases, in the owner, subject only to such servitude as the corporation has power to impose, and their power in this respect is limited, as a general rule, to such use of the land as may be reasonably necessary for a right of way. *Taylor* v. *Railroad Co.,* 38 N. J. Law, 28; 1 Redfield on Railways, p. 270. Such grants, like all public grants, are to be strictly construed. The grantee takes nothing except what is plainly given either in express terms or by necessary and un-

avoidable implication. What is not plainly given is to be understood as withheld."

In *Consumers Gas Trust Co.* v. *American Plate Glass Co.,* 162 Ind. 393, 395 (68 N. E. 1020), the supreme court of Indiana had occasion to pass upon a controversy similar to that in the instant case. A gas company had sought to enjoin the lessee of a railroad company from drilling wells on its right of way, on the ground that the record owner of the lands in question had leased the property to the gas company for drilling purposes. The defense was that the railroad company had secured title to the land by adverse possession. In affirming a judgment for plaintiffs, the court said:

"It is true that said railway company might have acquired the fee by grant, and that a title by adverse possession is as good as the best title known to the law, yet, unless all distinction in the law of adverse possession between the acquirement of the fee in land and the acquirement of an easement therein is to be lost sight of, consideration must be given to the nature of the user. The soundness of a title is one thing. The extent of it is quite another. A prescriptive right, where there is no color of title, cannot be broader than the claim which the user evidences. *Brookville & Metamora Hydraulic Co.* v. *Butler,* 91 Ind. 134 (46 Am. Rep. 580); *Peoria & E. R. Co.* v. *Railway Co.,* 154 Ind. 218 (56 N. E. 210); *Indianapolis Water Co.* v. *Kingan & Co., Ltd.,* 155 Ind. 476 (58 N. E. 715). Ordinarily, at least, there is no user by a railroad company beyond a user for the purpose of a right of way. A corporation which is organized under the general railroad statute is authorized to condemn only an easement. If it enters without title and constructs its main line, the landowner cannot eject it, but is confined to the remedy given to procure an assessment of his damages."

In *Meyer* v. *Railway Co.*, 63 Ind. App. 156, 167
(113 N. E. 443), the court held that although, accord-
ing to the interpretation of statutes, a railroad by
condemnation, or by release, acquired land in fee
rather than an easement, nevertheless, the interest
of the railroad in lands resulting from adverse pos-
session was merely an easement.  The court said:

"Whatever interest or estate appellee owns in
the land involved here is based on the fact that the
use of such lands for the full prescriptive period,
or in other words, such interest or estate, is in the
nature of a prescriptive right.  It is the use of the
lands as indicated which the court finds to have been
continuously and adversely exercised.  Appellee, in
support of its contention that under the facts found
it owns the lands in fee rather than an easement
therein, constructs an argument in effect as follows:
That prescription creates the presumption of a
grant; that by the act of 1832 appellee's predecessor
was authorized to acquire lands in fee by relinquish-
ment equivalent to a grant.  A prescriptive right
being established, a grant coextensive in quantity
and identical in quality with the grant which appel-
lee's predecessor was authorized to take by the terms
of the creating act must be presumed, and hence that
appellee must be declared to be the owner of the
land in fee.  But, as we have established from a con-
sideration of the decided cases, the fact that appel-
lee's predecessor was authorized by its creating
statute to acquire lands in fee for right of way
purposes was not prohibitive of a right to acquire
by contract, and hence by grant a less interest or
a smaller estate in the lands desired.  The question,
therefore, arises whether from the established pre-
scriptive right a grant of the lands in fee must be
presumed, or merely a grant of an estate or interest
sufficiently comprehensive to protect the use as it
has been exercised.

"*Indianapolis Water Co.* v. *Kingan & Co., Ltd.*,
155 Ind. 476 (58 N. E. 715), is in point here.  That

case involved the question of the overflow of lands incident to the construction and operation of a canal built under the public improvement acts of 1835 and 1836. There, as here, appellant's predecessors were authorized by such acts in a proper proceeding to acquire lands in fee for canal purposes. The flowage having continued for more than 20 years, the canal proprietors claimed title to the overflowed lands in fee. In holding against such contention, the supreme court say:

" 'After possession for 20 years the conclusive presumption arises of a grant of a right ample enough to protect the possession. "A prescriptive right can never be broader than the claim evidenced by the user." * * * The user by flowage evidenced no broader claim than a right of flowage; and such a claim is a mere easement.' * * *

"We conclude that appellee's estate in the lands described in the decree, under the facts found, is an easement to use and occupy such lands for the purpose of maintaining and operating its railroad on and over the same, rather than an estate in fee simple in the land."'

In *Chouteau* v. *Railway Co.*, 122 Mo. 375 (22 S. W. 458), where a statute provided that, on condemnation, the railroad would acquire the "fee simple title" of the land, it was held that nothing more than an easement passed, giving the railroad perpetual and continuous title so long as it used the land for the purpose for which it was taken. The court said:

"In the first place, although the law of its organization apparently vests in the original company the 'fee simple title' of the land taken by that company through process of condemnation, yet, when the whole act is taken under review, it becomes at once apparent that such is not its meaning. The evident object and scope of the act was simply to have the land either relinquished or taken for the purposes of constructing, maintaining, and operating a railroad. In other words, the original company took a mere easement in the land, and not the fee. Precisely this

view of the point was taken by this court in *Kellogg
v. Malin,* 50 Mo. 496 (11 Am. Rep. 426), when having
under consideration the charter of the Platte County
Railroad Company (Laws 1853, p. 355 *et seq.*), where
terms identical with those employed in the charter
of the Pacific Railroad Company are used. In that
case Wagner, J., said: 'It is true that, in speaking
of the title which the company acquire, the legisla-
ture here uses the term "fee simple;" but did it
contemplate a "fee simple" according to the techni-
cal legal meaning of the term? * * * The use is
vested in the public, but the reversionary title still
continues in the owner of the soil. In my opinion,
notwithstanding the language used, nothing more
than an easement passed to the road, giving it per-
petual and continuous title, so long as it used the
land for the purpose for which it was taken, but,
when the use was abandoned, then it would revert
to the owner of the premises.' "

Where a statute provided that in the absence of
condemnation or contract with the owner, there was
a presumption "that the land upon which the said
road or any of its branches may be constructed, to-
gether with a space of 100 feet on each side of the
center of said road, has been granted to the said
company by the owners," it was held that the rail-
road acquired only an easement to such lands. *Nor-
folk Southern R. Co.* v. *Stricklin,* 264 Fed. 546.
Where a railroad surveyed and took possession of a
right of way without acquiring right thereto by con-
veyance or condemnation, by operation of the rail-
road over such right of way it merely acquired an
easement for railway purposes. *Cleveland, C., C. &
St. L. R. Co.* v. *Cross,* 87 Ind. App. 574 (162 N. E.
253). In condemnation for a right of way, no more
land and no greater interest in it can be taken by
the railway company than the public use requires,
which is ordinarily the surface of the land. *South-*

*ern Pacific. R. Co.* v. *San Francisco Savings Union,* 146 Cal. 290 (79 Pac. 961, 70 L. R. A. 221, 106 Am. St. Rep. 36, 2 Ann. Cas. 962). Where a right of way is taken by condemnation, minerals are reserved to the owner of the fee. *Missouri, K. & N. W. R. Co.* v. *Schmuck,* 69 Kan. 272 (76 Pac. 836).

"The possession of a railroad company, which is confined to the laying of tracks and their use, would not, without more, establish an adverse possession beyond the roadbed and tract, or possibly the incidental and necessary right of way, unless what it did was done under an assertion of title to the whole tract involved, and there were other acts proven which fortified and exhibited a claim to all the land." *Brinker* v. *Railway Co.,* 11 Col. App. 166, 168 (55 Pac. 207).

Since a railroad can only acquire an easement over land by condemnation, it can secure no greater interest by prescription; and a prescriptive right, where there is no color of title, cannot be broader than the claims which the user evidences. Ordinarily, there is no user by a railroad company beyond the use for purposes of right of way. *Hoffman* v. *Zollman,* 49 Ind. App. 664 (97 N. E. 1015).

From a consideration of our constitutional and statutory provisions, and the adjudicated cases, it is our determination that a railroad company in this State can acquire by prescription no rights to minerals beneath the surface of its right of way. Any rights acquired by adverse possession therein are limited to the use of such land for purposes of a right of way.

It follows that the decree of the trial court is affirmed, with costs to defendants.

Sharpe, Potter, and Wiest, JJ., concurred with McAllister, J.

BUTZEL, J. (*concurring*).  I concur in the result but do not subscribe to all of the statements made in the foregoing opinion.  The question of the extent of the title that can be acquired by condemnation is not before us.  I reserve my opinion on this question until it is properly presented in a case where the issue arises.  I concur in holding that a railroad only acquires an easement when its user is wholly limited during the period of adverse possession to the right of way.  *Hoffman* v. *Zollman,* 49 Ind. App. 664 (97 N. E. 1015).  See, also, *Consumers Gas Trust Co.* v. *American Plate Glass Co.,* 162 Ind. 393 (68 N. E. 1020); *Indianapolis Water Co.* v. *Kingan & Co., Ltd.,* 155 Ind. 476 (58 N. E. 715); *Pennsylvania R. Co.* v. *Breckenridge,* 60 N. J. Law, 583 (38 Atl. 740).

NORTH, J. (*dissenting*).  Plaintiff filed two bills of complaint by which it sought to have quieted in it the title to two separate parcels of land.  In each case defendants had decree dismissing the bill and plaintiff has appealed.  The parties to this appeal agree that an accurate statement of the question involved is as follows:

"Does a railroad company organized under the laws of Michigan obtain fee title to land by adverse possession, giving right to recently discovered oil, where it entered upon the land without permission 50 years ago, cut down standing timber for a 100-foot right of way, laid a track, erected and maintained fences, kept brush cut, excluded others therefrom and has run its trains over the track ever since?"

The contention of the respective parties is clearly stated by defendants as follows:

"Defendants concede that the plaintiff has acquired by prescription, a right to use the strip of land, or right of way, to the extent which its user

in the past evidences. Defendants admit that the plaintiff has title in fee to an easement in this right of way, acquired by prescription.

"Plaintiff claims that it acquired title in fee, by prescription; and that its title so acquired, gives it the absolute title in fee to the land included in the right of way."

Because of different constitutional and statutory provisions adjudications of the issue presented have resulted in varying decisions in other jurisdictions. But it has already been passed upon in this jurisdiction and decision of this court is in accord with the contention of appellant.

"Can a railroad company acquire title to land by adverse possession? This court has held that it can. *Felton* v. *Wedthoff*, 185 Mich. 72. It is said in 2 C. J. p. 229 that the weight of authority so holds." *Munroe* v. *Railway Co.*, 226 Mich. 158, 165.

The above-cited case notes that there are "a number of well-considered decisions which maintains the contrary doctrine;" and points out the distinction, arising from different constitutional and statutory provisions, in the decisions of Pennsylvania and North Carolina.

It seems clear that plaintiff's continuous, open, notorious and exclusive possession of the parcels of land here involved was just as adverse so far as the rest of the world was concerned as though the land had been used for storage of lumber, agricultural purposes or the like. As applied to acquiring title by adverse possession, there is no good reason for holding, on the ground that plaintiff used the property only for a right of way, that it did not acquire a fee title to the land. This is in accord with our holding in *Quinn* v. *Railway Co.*, 256 Mich. 143, 149, wherein we said:

"Unlike some others, our statutes do not single out right of way for special treatment, but they pro-

vide a uniform rule for the acquisition of lands and other property 'for the construction, maintenance and accommodation of its railroad,' bridges, buildings, et cetera (2 Comp. Laws 1929, § 11121 [Stat. Ann. § 22.212]).

"Title may be acquired by voluntary grant, purchase, condemnation * * * or prescription."

It is somewhat significant that in the above case it was held a grant of a right of way "to be used for railroad purposes only," nonetheless conveyed to the railroad company title in fee to the land.

The trial judge in the instant cases was of the opinion that decision in *Munroe* v. *Railway Co.,* *supra,* involved only "surface rights, * * * and the case in no wise determines whether the adverse possession shall run beyond the surface rights involved in the actual possession." The context of the opinion in the *Munroe Case* forbids such an interpretation being placed upon it. At the very outset, in specifying the issue involved, the opinion states:

"In this action of ejectment (to try title), plaintiffs seek to recover possession of these strips of land (to which the railroad company asserted title by adverse possession). It is conceded that they (plaintiffs) have the record title thereto. The case was tried by the court without a jury. Findings of fact were made, from which the court concluded as a matter of law *that defendant had acquired title by adverse possession. * * ** In its tenth finding, the court found that defendant had been in possession of the land in dispute since 1877, without permission or license from the owners, and that the nature of *the possession was such as created in defendant a good and sufficient title thereto by adverse possession."*

The above determination of the trial court was affirmed. There appears to be no more justification for holding that title to a railroad company's right of way acquired by adverse possession is confined to

"surface rights" only than there would be in holding that one who used lands for agricultural purposes only and to which he had acquired title by adverse possession had "surface rights" only, and no title whatever to subsurface oil or mineral deposits.

Not only has the question under consideration been previously passed upon in this jurisdiction, as above indicated, but both from text writers and decisions of courts of last resort in other jurisdictions the decided weight of authority seems to sustain the appellant's contention.

"A railroad company may acquire title to land by adverse possession for the full period prescribed by the statute of limitations in the same manner as an individual." 2 Elliott on Railroads (3d Ed.), p. 655, § 1174.

"But the railway company * * * pleaded and proved that it had been in the open, notorious, exclusive, and adverse possession of this real estate, claiming title thereto, for more than 10 years prior to the bringing of this suit. This adverse possession then vested the title to the real estate occupied by the railway company in it as against all persons except the State of Nebraska." *Myers* v. *McGavock,* 39 Neb. 843, 871 (58 N. W. 522, 42 Am. St. Rep. 627).

"Where a railroad company has been in the actual, visible and exclusive possession of land for a right of way for 20 years, it is not essential to the bar of the statute of limitations, in ejectment against the company, that its officers should have made oral declarations of claim of title, but it will be sufficient if the proof shows that the company has so acted with reference to the property as to clearly indicate that it claimed title." *James* v. *Railroad Co.* (syllabus), 91 Ill. 554.

Likewise it has been held in Texas that a railway corporation can acquire "by adverse possession the fee simple title to the land occupied as a right of

way." *Gulf, C. & S. F. R. Co.* v. *Brandenburg* (Tex. Civ. App.), 167 S. W. 170. Holdings of similar purport will be found in the following cases: *LeBlanc* v. *Railroad Co.,* 72 Miss. 669 (18 South. 381); *City of St. Paul* v. *Railway Co.,* 45 Minn. 387 (48 N. W. 17). See, also, *City of St. Paul* v. *Railway Co.,* 63 Minn. 330 (63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184); *East St. Louis & C. R. Co.* v. *Nugent,* 147 Ill. 254 (35 N. E. 464); *St. Louis, A. & T. H. R. Co.* v. *Nugent,* 152 Ill. 119 (39 N. E. 263); *Hargis* v. *Railway Co.,* 100 Mo. 210 (13 S. W. 680).

Surely our holding in *Munroe* v. *Railway Co., supra,* and the above-cited authorities are in harmony with the Michigan statute which provides the character of title which a railroad corporation takes to its right of way if obtained through condemnation proceedings. The pertinent portion of the statute reads:

"The company shall be entitled to enter upon and take possession of and use the said land, franchise, and other property for the purpose of its incorporation; and all persons who have been made parties to the proceedings, either by publication or otherwise, *shall be divested and barred of all right, estate, and interest in such real estate,* franchise, or other property, until such right or title shall be again legally vested in such owner." 2 Comp. Laws 1929, § 11135 (Stat. Ann. § 22.226).

Under the record made in the trial court and the above-noted authorities, plaintiff was entitled to a decree in each of these cases quieting in it title in fee simple to the parcels of land involved. Decrees should be entered in this court accordingly. Plaintiff should have costs of both courts.

Bushnell, C. J., and Chandler, J., concurred with North, J.